HART
vs.
REED.
on by Miller to prevent or set aside the execution of the judgment against him.

---

CASE.

*Case 54.*

# Hart *vs* Reed.

ERROR TO THE JESSAMINE CIRCUIT.

*Libel and slander.   Malice presumed.*

*December 24.*

CHIEF JUSTICE ROBERTSON delivered the Opinion of the Court.

The case stated.

In this case *Nathaniel Hart* brings up for revision a verdict and judgment for $5,000, rendered against him in favor of *John Reed*, on the general issue in an action for a libel on the following written communication purporting to be a letter from *Hart* to one *Parks*, in the city of *Louisville:*

Libelous matter set forth.

"SPRING HILL, *January* 11*th* 1838.
" *Mr. Lyman Parks.*
"SIR:—A young man by the name of *John Reed*, "who has been raised adjoining my farm and employed "in your city, in a retail store on Market Street, by a

" merchant by the name of *Seawell*, as I am informed, not" knowing him, and feeling it my duty to give some re-" ports, current in the neighborhood, have concluded to " address a few lines to you."

" The young man came up during the past holidays and " brought to his father's family goods, of a fine quality, " consisting of gloves, stockings, handkerchiefs, casi-" nets, janes, &c. &c. to the amount of $300, together " with $100 to $150 in money. Knowing the family, " as I do, and their limited circumstances, a suspicion " has naturally arose how he got possession of this prop-" erty; if honestly, he has shown his folly in laying it " out in this way. He has no female in the family but a " mother, the mother of some ten sons; a laborious and, " as far as I know, an honest woman. You are, no doubt, " acquainted with the gentleman who employs the young " man, if so, you can make the necessary inquiries and " give such information as you may think necessary. No " person here pretends to accuse him of dishonesty, but " all who know the circumstances feel surprised that " such an amount of property should have come to his " possession in these hard times, for his services in so " short a time. If the young man is innocent, his repu-" tation ought not to suffer, and if guilty, not until " his guilt is established: and in any event, I do not " wish my name used unnecessarily; my only object is to " give such information as will enable *Mr. Seawell*, or " whoever the young man may be employed by, to make " a proper investigation of the subject. You will please " write me in answer to this, and if an investigation is " necessary, upon application to me I will give the infor-" mation which I possess."

" Relying upon your prudence in this business,
" I remain your obedient servent,
" ———— ————."

Among various questions presented by the record, the first and most important one is, whether, in judgment of law, the foregoing communication should be deemed li-belous.

Without incumbering this opinion by a minute analy-sis of the letter, we deem it necessary only to suggest

HART
vs
REED.

that, though the author says "no person here pretends to *accuse* him of dishonesty:" yet, considering the tone and tenor of the whole letter, the importance given by the author to the rumors and the facts communicated, the alleged unsuitableness of the goods, and poverty of *John Reed* and his family, the expressed *suspicion* from those facts, the *surprise* that so much of value should have come to his hands *in so short a time* and *in such hard times*, and various other circumstances, we are unable satisfactorily to resist the conclusion that the writer suspected that *Reed* had obtained the goods dishonestly, and that the reading of the letter impressed the like suspicion on the mind of *Parks*.

A written communication, the terms of which impute a criminal act, is libelous and actionable in itself, if published with *malice* either *express* or *implied* —and the law will generally imply malice from the *falsehood* of slanderous imputations —a written communication, *imputing* a *suspicion* of *dishonesty may* be libelous.

*Starkie*, in his treatise on slander, p. 38, says, "where "the terms of the communication are indirect, it may be "laid down as a general rule that, whenever words are "used, calculated to impress upon the minds of the "hearers, a *suspicion* of the plaintiffs having committed "a criminal act, such an inference may and ought to be "drawn, whatever form of expression may have been used." In such a case, the authorities decide that, a criminal act being thus imputed, such words are actionable in themselves. And though a direct charge of "*dishonesty*," orally made, would not, *per se*, be *slander*, because, in the popular sense, it does not necessarily import a criminal act, yet, as such an imputation tends to degrade, it may be *libelous*, if made in writing. As, therefore, the letter in this case imports a suspicion of *dishonesty*, it may be libelous.

The imputation of malice, arising from the falsehood of words, may be repelled, and the burthen of proving *express* malice thrown on the plaintiff.

But no words, written or spoken, will be actionable, unless they had been published with *malice*, express or implied. And though the law will, *prima facie*, generally imply malice, from the falsehood of a slanderous imputation, yet the manner and occasion of the publication may rebut such an implication, and impose on the plaintiff the burthen of proving express malice.

And the law will not presume *malice*, where the communication is *confidential*, *prudently* made, and in good faith, either through

The law, for example, will never presume malice from a confidential communication, prudently made, in good faith, either through benevolence to the person concerning whom it is made, or in the discharge of a legal, social, or moral obligation. If *Hart* believed that there were

such rumors in his neighborhood as those described in the letter to *Parks,* and more especially, if he accredited those rumors, he had a legal right to communicate them either to *Seawell* or to *John Reed,* in confidence, and without responsibility. And, in making such a communication, he may only have discharged both a moral and a civic duty.

HART
*vs*
REED.

benevolence to plaintiff, or discharge of a legal, social, or moral obligation.

The letter itself purports to be a confidential communication to *Seawell,* through a friend, the writer being unacquainted with *Seawell.* And as it is, in our opinion, the *motive* and *end* of such a communication, and not so much the *instrumentality, (if prudent and discreet,)* by which it is made, that extracts from it all implied malice, the law would appear to be inconsistent with its own principle and policy, were it to withhold its sanction from a confidential communication, made in good faith and for an approved purpose, through a prudent friend to a stranger interested in the facts thus indirectly communicated to him. The facts characterizing such a communication, repel all presumption of a malicious intent, which could arise from the mere publication itself.

It is the *motive & end,* and not so much the *instrumentality,* (*"if prudent and discreet,"*) which is used, that extracts from the act all implied malice.

The letter in this case purports, on its face, to have been intended, either for ensuring *Reed's* exculpation if he could, (as he might instantly have done if innocent,) show that the rumor was false, or that he had obtained the goods honestly, or for the purpose of benefitting his employer and aiding the cause of public justice, if the solicited investigation should result unfavorably to innocence.

The letter in this case (recited above) does not import libelous matter, actionable in itself, without the aid of extraneous proof authorizing the inference of malice.

Deciding on the face of the letter alone, therefore, we are of the opinion that it does not, in itself, import libelous matter, actionable in itself, and that consequently, this action cannot be maintained for a libel, without proof of some extraneous fact authorizing the inference that the writer was actuated by express malice, or, in other words, that in making the communication he was not influenced by the ostensible motives as indicated therein, but was instigated by ill will to *John Reed,* and was thus insidiously endeavoring, unjustly, to injure his character.

But the declaration avers both malice and falsehood, and therefore the Circuit Judge did not err in overruling the demurrer to it, which admitted those averments.

In the progress of the trial the Circuit Judge gave other decisions which we must also revise:

1. *Hart's* counsel having proved by a witness the non-residence of *Mrs. Elizabeth Stone*, whose deposition had been taken *de bene esse*, *Reed's* counsel was permitted, by the court, to prove by the same witness that she was the "*Betsey Jones*" who had two illegitimate children, and afterwards also, in the examination in chief, to prove the same fact, though the right to do so was resisted.

*It is error to admit proof of a particular fact, tending to the degradation of a witness—matter which would sustain a plea of justification cannot be given in evidence, under the plea of not guilty, in slander.*

In permitting, especially in the last instance, proof of such a particular fact, disparaging the moral character of the deponent, whose deposition was important to Hart, the Circuit Judge certainly erred; the proof not appearing to have been at all necessary for identification, as urged by Reed's counsel, with the apparent concurrence of the Judge, and even if it had been useful for identifying the deponent, it would have been inadmissible, because it is a particular fact tending to her discredit.

2. The Court refused to permit *Hart* to prove what articles were contained in *Reed's* trunk when he carried it, about the 28th of December, 1837, from *Louisville* to his father's house, in Woodford, near *Hart's* residence; and in this also, it seems to us, that the Judge erred.

As it would be unreasonable to permit a judicial conviction without a direct charge on the record, and full notice thereof, therefore the action of slander has, in modern times, been made an exception from the general rule which, in actions on the case for *tort*, authorizes proof, under the general issue, of facts which might have been specially pleaded in justification. And therefore, ever since the decision in *Underwood* vs *Parks*, (*Strange*, 1200,) it has been well settled, that matter which would sustain a plea of justification in slander shall not be proved under a plea of not guilty, even in mitigation of damages. But it has been often said, and even decided in *England*, that "any matter, short of actual proof of justification," or of "a complete defence to the action, had a justification been pleaded," "are admissible in

HART
vs
REED.

mitigation." A contrary notion has also been urged by many learned jurists, and *Mr. Starkie* seemed to think that no one fact which might be admissible, as even one link in a chain of facts, necessary to sustain a justification, ought to be admitted under the general issue in mitigation of damages.

*Mr. Starkie's* suggestion would, in our opinion, extend the exclusion farther than principle or authority would require or allow, as ground for the exclusion of particular facts in an action of slander—*surprise* should have no more influence than it would be entitled to in other actions on the case, excepting only so far as the facts might conduce to the *crimination* of the plaintiff, or to the proof of the actionable charge or imputation. It is not, as we think, so much the *admissibility* of a fact, under a plea of justification, as the tendency of that fact to sustain the plea, which should determine its competency under the general issue in slander. Malice is essential to the action. The plea of not guilty puts the question of malice in issue. A confidential publication may be presumed to have been without malice until the contrary shall appear. The fact that the only publication was confidential, and upon a justifiable occasion, is admissible under the general issue, but is not *conclusive as to the intention;* and *in such a state of case,* whether there was probable cause or not, might be an important question in determining the motive and the actionability of the charge imputed.

*Here* the letter only details rumors, and intimates a *suspicion resulting from the rumored facts.* If there had been such rumors, there can be no doubt that *Hart* might prove that fact under the general issue, because it would tend to negative the charge of malice and to define the extent of actual damage done to Reed by the letter, and because it would not be admissible in support of a plea of justification. But even the rumored facts themselves, if specially pleaded, would have been clearly insufficient as matter of justification. The letter may be a libel only because it intimates a suspicion of dishonesty, which is deemed equally as actionable as a direct charge, because it is considered an indirect imputation of dishonesty, and

Where the matter charged is not, *prima facie,* libelous, def't, to repel the inference of malice, may prove facts constituting ground for suspicion, under the plea of not guilty.—Defendant, in such case, may prove the truth of the statement in writing.

therefore, proof of grounds for suspicion merely, would not justify: *Calloway* vs *Middleton*, (2. *Mar.* 273.)

Then as all the facts together, as suggested in the letter, would be insufficient under a plea of justification, it does seem to us that *Hart* may lawfully prove at least one of them, for the purpose of fortifying a presumption against any malevolence in the communication to *Parks*, and especially as the rejected fact could not, *per se*, tend, in the slightest degree, to inculpate *Reed*.

If, in good faith and in confidence, Hart stated only what he believed and what was true, as a good citizen may do, it would be hard indeed if he could be permitted neither to plead nor to prove the truth. The law cannot be so unreasonable.

3. The Circuit Judge erred also in instructions given on the trial: first, in instructing the jury that, if they believed that *Hart* wrote and sent the letter to *Parks*, they were bound to find against him. Secondly, in instructing them that, though the letter was not in *Hart's* handwriting, still, any implied recognition of it by him, after the commencement of this action, was a publication for which he is liable, and thereby, in instructing them that, if there was proof of malice, the existence of the reports, as stated in *Hart's* letter, was entitled to no influence as matter of "alleviation."

The first instruction was wrong because, as is already suggested, the mere sending of the letter without any extraneous proof of malice is not actionable; the second was erroneous because, though a recognition of the letter by *Hart*, at any time, might be evidence of the fact that he had agency in the writing and sending of it, yet a recognition since the institution of this action was not, itself, such a publication as would be a legal ground for assessing damages in this case; and the third was erroneous, because the existence of the rumors, as stated by *Hart*, certainly should tend to mitigate the damages because, were there no other reasons, the fact that such rumors had prevailed, would show that *Reed* had not been so much damnified by *Hart's reiteration* of them as might otherwise have been presumed: *Calloway* vs *Middleton*, (*supra.*)

Where the matter of a written paper consists of suggestions of reports and is not, *prima facie*, libelous, it is error to instruct the jury "to find for plaintiff if they believe defendant made & published it," nothing more saying.—It is also error, in such case, to instruct the jury that every implied recognition of the writing by defendant, after suit brought, was a publication for which defendant was liable.—It is also error in such case, to instruct the jury that if there was proof of malice, the previous existence of the report mentioned in the writing, should be entitled to no influence in mitigation of damages.

As the judgment must be reveresd for the foregoing causes, it is unnecessary, and therefore might seem to be rather extra-judicial, to decide or even to intimate how far, or whether at all the facts and the law authorized the verdict, or whether, upon the whole case, as presented on the trial, such a verdict indicates, as argued in this Court, passion or prejudice in the jury.

Judgment reversed and cause remanded for a new trial.

*Hewitt* for plaintiff;  *T. F. Marshall* for defendant.