# MIDLAND PUBLISHING COMPANY, Respondent, v. IMPLEMENT TRADE JOURNAL COMPANY et al., Appellants.

### St. Louis Court of Appeals, November 15, 1904.

1. **LIBEL: Actionable Words Per Se.** The use of the word "fake" in a publication applied to a trades journal necessarily tended to prejudice its business and was libelous *per se*.

2. **———: Punitive Damages: Pleading.** Section 594 of the Revised Statutes of 1899, providing for a separate statement of the actual and exemplary damages sought to be recovered, is sufficiently complied with if the amounts demanded for each are separately stated in the prayer for relief.

3. **LIBEL OF PUBLICATION: Publisher.** The publication of a libelous statement regarding a trades journal by its name, is a libel on the manager and publisher of the journal.

4. **———: Corporation: Manager of Corporation.** The publication of a libelous article concerning the manager of a corporation can not be enlarged by innuendo so as to make it applicable to the corporation, in the absence of allegations or evidence showing that the manager and the corporation are one, although the corporation may have been indirectly injured by the publication.

Appeal from St. Louis City Circuit Court.—*Hon. Horatio D. Wood*, Judge.

AFFIRMED IN PART AND REVERSED IN PART.

*Byron F. Babbitt, Charles B. Adams* and *Wash Adams* for appellants.

(1) The court erred in instructing the jury at the instance of plaintiff, that they might assess punitive damages or smart money against defendants in the absence of a separate statement or claim in the petition therefor. R. S. 1899, sec. 594; Berryman v. Cox, 73 Mo. App. 67; Gilfillan v. McCrillis, 84 Mo. App. 576;

Clothing Co. v. Dry Goods Co., 156 Mo. 393, 56 S. W. 1112. (2) It appears upon the face of the record that the verdict for the punitive damages assessed is against the law and not supported by the petition. R. S. 1899, sec. 594; Inglis v. Floyd, 33 Mo. App. 565. (3) The court erred in refusing defendant's instruction in the nature of a demurrer to the evidence and in submitting the case to the jury under the first count. The words declared upon in the first count of the petition are not libelous *per se* against the plaintiff, and in the absence of an allegation and proof of special damages, plaintiff was not entitled to recover therefor. Townshend on Libel and Slander (4 Ed.), secs. 204-205; Kennedy v. Press Pub. Co., 41 Hun (N. Y. Sup. Ct.) 422; Maglio v. New York Herald Co., 83 App. Div. (N. Y.) 44; Heriot v. Stewart, 1 Esp. Cas. 437; Dooling v. Pub. Co., 144 Mass. 258; Boynton v. Shaw Stocking Co., 146 Mass. 219; Fen v. Dixe, W. Jones 444. The innuendo can not extend, enlarge or misapply the natural meaning of the published words. Dyer v. Morris, 4 Mo. 214; Naulty v. Bulletin Co., 206 Pa. St. 128; Kilgour v. Evening Star, 96 Md. 16. (4) The court erred in refusing defendant's instruction in the nature of a demurrer to the evidence and in submitting the case to the jury under the second count. (5) The words declared upon in the second count are not libelous *per se* as against the plaintiff corporation, and no action could be maintained by plaintiff thereon in the absence of an averment and proof of special damages to its business or credit. Ins. Co. v. Ecclesine, 34 Sup. Ct. (N. Y.) 81; Bank v. Thompson, 18 Abb. Pr. 418; Mutual Reserve Fund Ass'n v. Spectator Co., 50 Sup. Ct. (J. & S.) 460; Trenton v. Perrine, 3 Zabr. (N. J.) 402.

*W. M. Kinsey* for respondent.

(1) The word "fake" is defined by modern lexicographers to mean "to cheat; to swindle; to steal, and

to rob, when used as a verb; and as a trick, a swindle, when used as a noun.'' Webster's International Dictionary (1890). The application of the word "fake," to plaintiff in its business, of printing and publishing its journal, "Farm Machinery," necessarily tended to prejudice plaintiff in its said business and was actionable *per se.* Proof of special damages was not necessary in order that a recovery might be had on the first count of its petition. Military Academy v. Gaiser, 125 Mo. 525, 28 S. W. 851. (2) It has been repeatedly held in this State that exemplary damages may always be allowed in an action for slander or libel and that the allowance of such damages is within the discretion of the jury. Callahan v. Ingrain, 122 Mo. 371, 26 S. W. 1020; Nicholson v. Rogers, 129 Mo. 141, 31 S. W. 260; Carson v. Smith, 133 Mo. 637, 34 S. W. 855. (3). An award of punitive damages contemporaneously with an award of nominal damages can not be set aside on that ground under the settled law of this State concerning the extent of recoveries in actions of libel. Ferguson v. Chronicle Publishing Co., 72 Mo. App. 465.

### STATEMENT.

This action is for libel brought in the St. Louis circuit court by the Midland Publishing Company, a corporation, and the owner and publisher of a trade journal known as "Farm Machinery," against the Implement Trade Journal Company, a corporation, and the owner and publisher of a magazine called the "Implement Trade Journal," published at Kansas City, Missouri, and also against C. B. Hall, Carl J. Simpson and James E. Baird. The petition contains two counts; in the first it is alleged that defendants, on October 15, 1900, printed and published of and concerning the plaintiff, the following libel:

"HINTS TO ADVERTISERS.

"This is from the fake implement trade paper published at St. Louis: 'According to the American Newspaper Directory, June, 1900, edition, Farm Machinery is the only implement trade newspaper at Kansas City having a circulation exceeding 2250 copies.'

"This is a letter of inquiry from the Implement Trade Journal Co.:

"'Kansas City, October 6, 1900.
"'American Newspaper Directory,
"'New York, N. Y.
"'Gentlemen:
"'Will you kindly inform us if you have received a report of circulation at any time during the present year from this office and oblige,
"'Yours truly,
"'IMPLEMENT TRADE JOURNAL CO.,
"'By C. F. HALL, Mgr.'

"This is the reply to the Implement Trade Journal Company's letter of inquiry:

"'New York, October 8, 1900.
"'Publishers of Implement Trade Journal,
"'Kansas City, Mo.
"'Dear Sirs:
"'In answer to your favor of the 6th inst., we beg to inform you that there has been no circulation statement received from your paper during this or last year.
"'Respectfully,
"'THE AMERICAN NEWSPAPER DIRECTORY,
"'By P. M. AYRAD.'"

By way of innuendo, the following is alleged:
"Meaning by the words, 'the fake implement trade paper published at St. Louis,' plaintiff's said journal, 'Farm Machinery,' and intending thereby to charge and to cause it to be believed of and concerning plaintiff among said manufacturers and dealers, that said

plaintiff had been guilty of deceit and dishonorable trickery in the conduct of its said business."

It is also alleged that defendants Hall, Simpson and Baird are the managing officers of the defendant. The second count alleges that on the fifteenth day of October, 1900, the defendant printed and published of and concerning plaintiff the following libel:

"MR. CROOKED K. REIFSNIDER GETS IT IN THE NECK
"AGAIN.

"This is from the 'Iron Age:'

"A somewhat curious state of affairs has developed in the case of the awards to collective exhibits at the Paris Exposition. It appears that each contributor to such a collective exhibit has a title the same as individuals to the award given to the combined exhibit. Thus a gold medal was awarded to the United States Association of American Advertisers, who had brought together a representative collection of posters and other advertising matter. Each one of the concerns who sent a copy of a poster may with justice claim that a gold medal was awarded to him, and might allow the inference to be drawn that it was for his product, which might not have come within two thousand miles of Paris.

"At the exposition there is a special newspaper building in which there is a collection of the technical and trade journals of the United States, with facilities for studying their contents. It is a deserved tribute to this class of journalism that a grand prize has been given for it. A short time since the journals represented were officially advised that each, individually, is entitled to the use of this grand prize, the David Williams Company alone receiving three such notices for its publications. Of all our contemporaries, only one has claimed the credit for this distinction without a word of explanation as to the manner in which it was obtained. Of all the others, those who have taken any

notice of it all modestly waived their share in the common glory.

"It is worthy of note that not a single American journal which had an exhibit of its own received a grand prize. In fact, not a newspaper in the world received that award, so far as we have been able to discover from a study of the official catalogue.

"The incident is one which might be passed over unnoticed were it not for the danger that the public may be imposed upon by those who have not seriously contributed to the recognition of American progress, but have merely been incidental contributors to a collective exhibit. It is even possible that such contributors have actually lowered the general standard of excellence, and yet may parade an award as a proof of individual merit."

This is followed by the following innuendo:

"Meaning by the words, 'Mr. Crooked K. Reifsnider gets it in the neck again,' the said Calvin K. Reifsnider, editor of said 'Farm Machinery' and general and responsible manager of plaintiff in the transaction of its business, and intending thereby to charge and to cause it to be believed of and concerning plaintiff, especially among manufacturers and dealers in farm implements, that said plaintiff had been guilty of deceit and dishonorable trickery in the conduct of its said business."

The answers were general denials.

The jury found for plaintiff on both counts and assessed its actual damages at one dollar on each count, and punitive damages at five hundred dollars on the first and six hundred dollars on the second count. Defendants appealed.

Plaintiff's evidence shows that the alleged libels were published as alleged and their publication extensively circulated. It shows that plaintiff was the publisher of "Farm Machinery," a periodical especially devoted to manufacturers and dealers in farm imple-

ments, and that said journal has a wide circulation in the western States. It is actually published in the city of St. Louis but is dated St. Louis and Kansas City, and had, on October 15, 1900, a circulation of twenty-two hundred and fifty copies in what is denominated its Kansas City territory. Calvin K. Reifsnider founded "Farm Machinery" in 1887, and continued to be its editor and manager from that date up to the time of the trial. The evidence shows that Reifsnider travelled over several of the western States, in the interest of the journal, and that he was well known to the implement trade through the trade journal, "Farm Machinery," and his relation to this journal was well understood by the trade. The evidence further shows that the plaintiff made an exhibit of a copy of its journal at the Paris Exposition in 1900, among a large number of other American trade journals, and a collective award was made to these exhibitors called "Grand Prix," and what is called a diploma of said award was sent to the publisher of each of these papers, including the plaintiff. This diploma was used by the plaintiff for advertising purposes.

The "Iron Age," a trade journal of large circulation and influence, published in the city of New York, first published the libel alleged in the second count of the petition, except the headline. The defendants reproduced the article, adding the headline, to-wit: "Mr. Crooked K. Reifsnider gets it in the neck again." Reifsnider, the only witness in the case, testified that his only complaint of this article was its application to himself. Defendants offered no evidence.

The court, in respect to what constituted a libel, instructed the jury as follows:

"The court advised you as a matter of law that words printed and published of and concerning another and in his business, which taken in their ordinary or usual sense, impute or charge the practice of deceit or dishonorable trickery in said business are libelous if

not true, and that one against whom such an imputation or charge is published may recover damages from the author or publisher although no special injury may be shown to have resulted therefrom.''

As to the meaning of the words ''libel'' and ''libelous,'' the court instructed as follows:

''The court further advises you that the words 'libel' and 'libelous' as used in these instructions, mean the malicious defamation of another, expressed either by writing or printing, which tends to injure him in his business,'' etc.

The court further instructed that publication of defamatory words is malicious, if wrongfully and intentionally made, and also instructed as follows:

''In determining the question whether the publication of the particular words complained of, to-wit: 'This is from the fake implement trade paper, published at St. Louis,' was or was not libelous, you are to take into consideration the entire article read in evidence of which they are a part, and to give it that plain, usual and natural interpretation which would be given to it by any ordinary person who might read the same. If in the light of such interpretation you believe and find from the evidence that the publication of said words was maliciously made or caused to be made by defendants of and concerning the plaintiff in its said business; that they were untrue, in the sense in which such words are ordinarily understood, and were libelous as herein defined, then it will be your duty to return a verdict for the plaintiff on the first count of its petition.''

On the measure of damages, the court instructed that if the jury found for plaintiff on the first count it should assess the actual damages at a nominal sum, and ''if you think proper, under all the facts and circumstances shown in evidence, even though no actual damages be shown, assess such further sum by way of punitive damages or smart money, as in your judg-

ment, considering all the facts and circumstances in evidence, you believe ought to be assessed against the defendants by way of punishment for the act complained of and to serve as a warning to prevent defendants and others being guilty of like acts." Like instructions were given for plaintiff on the second count. Defendants, at the close of the case, moved the court to instruct that under the law and the evidence plaintiff was not entitled to recover, which was denied. No other instructions were asked or given on behalf of defendants.

BLAND, P. J. (after stating the facts).—1. Defendants contend that plaintiff should have been nonsuited on the first count of the petition for the reason that the words declared upon are not libelous *per se* and there was no proof of special damages. The publication claimed to be libelous begins as follows: "Hints to Advertisers. This is from the fake trade journal published at St. Louis." The connection in which the word "fake" is used in this paragraph shows that it was not used, and could not be understood, in its proper sense, to-wit: "To coil in fakes, as a cable in a box," but in the sense it has obtained as a slang word, to-wit: "A swindle; a trick; to steal or filch." Century Dictionary. Its application in this sense to the plaintiff and its business of publishing its trade journal, necessarily tended to prejudice plaintiff in its business and was for this reason libelous. St. James Military Academy v. Gaiser, 125 Mo. l. c. 525, and cases cited. We think the issues on this count were properly submitted to the jury.

2. It is next contended that the allegations of the petition in respect to damages were insufficient to authorize the recovery of punitive damages. The prayer for relief is, "plaintiff says it has been actually damaged in the sum of one thousand dollars, for which sum, together with the sum of nine thousand dollars, as

punitive damages and the costs of this action, it prays judgment against said defendants." Section 594, R. S. 1899, reads as follows: "In all actions where exemplary or punitive damages are recoverable, the petition shall state separately the amount of such damages sought to be recovered." All this section requires is that actual and punitive damages shall not be grouped in one gross sum but that the amount demanded as compensatory, and the amount demanded as exemplary damages shall be separately stated. The petition does not group these damages, but states the amounts demanded separately, and hence we think it substantially complies with the requirements of the statute.

3. Counsel for defendant contends that the libel was against the trade journal, "Farm Machinery" and not against the plaintiff as a corporate body. The sin imputed is that of being a cheat, a fraud, a thief or pilferer. An inanimate thing cannot be guilty of cheating, defrauding, thieving or pilfering, and the word "fake" does not apply and could not have been understood by those who read the libel to apply to the journal but to apply to its manager and publisher, the plaintiff.

4. The libelous matter charged in the second count of the petition is not contained in the body of the article taken from the "Iron Age," but is contained in the following italicized headline of the article, to-wit: "*Mr. Crooked K. Reifsnider gets it in the neck again.*" The petition, by innuendo, undertakes to apply these words to plaintiff by alleging that Reifsnider was the responsible manager of plaintiff's business and the editor of its journal.

In Naulty v. Bulletin Co., 206 Pa. St. 128, it is said: "The purpose of an innuendo is to define the defamatory meaning which the plaintiff attaches to the words; to show how they come to have that meaning and how they relate to the plaintiff. But it cannot be used to introduce new matter, or to enlarge the natural

meaning of the words, and thereby give to the language a construction which it will not bear.''

In Bundy v. Hart, 46 Mo. 460, it is said: ''It is not the office of an innuendo to make averments, but to apply the words or explain their meaning.''

In Hudson v. Garner, 22 Mo. l. c. 426, quoting Chitty, it is said: ''An innuendo is only explanatory of some matter already expressed; it may apply to what is already expressed, but cannot add to or enlarge or change the sense of the previous words.''

There is no covert meaning in any of the words used in the headline. They are not ambiguous and do not require an innuendo to explain the meaning of any of them or to apply them. Any ordinary reader can understand them. They charge Reifsnider with being ''crooked,'' that is, dishonest. If Reifsnider and the plaintiff corporation were one and the same person, or if the general public, when it heard the name of Reifsnider mentioned in connection with ''Farm Machinery,'' understood the plaintiff corporation was referred to and not Reifsnider individually, these facts might possibly, have been alleged and proven, but it was not so alleged nor was any evidence offered showing or tending to show that Reifsnider is the corporation. Nor was it alleged or shown under the evidence that at the mention of the name of Reifsnider in connection with ''Farm Machinery,'' it was understood by the general public that the corporation was referred to. The publication itself and the evidence show that the libel was of and concerning Reifsnider individually. If so, then the plaintiff was not the proper party to bring suit, although it may have been indirectly injured by the publication of the libel. We think the instruction in the nature of a demurrer to the evidence on the second count should have been given, and conclude that the judgment on the first count should be affirmed but that the judgment on the second count should be reversed and it is accordingly so ordered. All concur.