## Smith v. Pure Oil Co. et al.

May 16, 1939.

W. R. HENRY and FINLEY HAMILTON for appellant.

TUGGLE & TUGGLE, WALTER B. SMITH and N. R. PATTERSON for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

This is an action for libel by Walter Ray Smith against Pure Oil Company, H. D. Sanders and James Adams. The petition was dismissed on demurrer and the plaintiff appeals.

It charges that in March, 1938, the defendants erected or caused to be erected and displayed a large sign board at ''Sanders Servistation,'' the company's property, on U. S. Highway No. 25, in Laurel County, containing the following false and malicious statements:

"WARNING!
Turn Left. ·U. S. 25-E
Constables & Fee Grabers
May Get You in Whitley County
Ray Smith County Attorney Gets
40% of Fine Plus $5.00 Cost."

The plaintiff was and is the County Attorney of Whitley County. His petition states that he is the person named and referred to in the publication; avers that it means that he as a "fee grabber" would corruptly accept or receive a percentage of fines and costs being wrongfully assessed against persons traveling in Whitley County through their arrest by constables, thereby imputing his unfitness for the office; that it was intended to prejudice the public against plaintiff and to subject him to disgrace, obloquy and ridicule in the performance of his official duties and in his profession as a lawyer; that the defendants intended and meant by the statements to charge him with the crime of unlawfully, feloniously and wrongfully receiving and accepting as County Attorney a percentage of fines and costs derived from the conviction of persons who were not guilty of violating any law; and that the statements were and are false and known to the defendants and each of them to be so concerning the plaintiff. It is further alleged that the sign was intended to and did convey to the many people passing the place on the highway that persons who operated automobiles through the county would be unlawfully and wrongfully arrested by constables, fined in the courts in which the plaintiff, as County Attorney, represented the Commonwealth of Kentucky, upon false charges and contrary to law, and that those persons were being forced by the officers and the courts to pay fines for offenses of which they were not guilty, and the plaintiff was unlawfully, wrongfully and corruptly receiving 40% of the fines plus $5.00 costs. It is charged that the statements were maliciously made and false "as to this plaintiff." There are other appropriate allegations of defamation, injury and damage. In addition an injunction was asked requiring the removal and discontinuance of the sign. It was later removed and that part of the case became moot.

It has always been the law that a written publication is libelous which falsely charges or imputes dishonesty or engagement in fraudulent enterprises of such a nature as reflects upon the character and integrity of a

person and to subject him to the loss of public confidence and respect. Hart v. Reed, 40 Ky. 166, 1 B. Mon. 166, 35 Am. Dec. 179. Because of the public interest this rule finds a more extensive application where the false defamatory charge or imputation affects the professional or official capacity of the person of whom it is written. If it imputes want of integrity, malfeasance or misfeasance, or is calculated to diminish public confidence in him the publication is actionable per se. Williams v. Riddle, 145 Ky. 459, 140 S. W. 661, 36 L. R. A., N. S., 974; Ann. Cas. 1913B, 1151; Spears v. McCoy, 155 Ky. 1, 159 S. W. 610, 49 L. R. A., N. S., 1033; Shields v. Booles, 238 Ky. 673, 38 S. W. (2d) 677; 17 R. C. L. 301; 36 C. J., 1187, 1188. Therefore, "statements accusing officers of official oppression and misuse of office to extort fees from members of the public have repeatedly been held actionable per se." 17 R. C. L. 303. This, obviously, is quite different from fair, reasonable and good faith comment on and criticism of public men, which is privileged. Tipton v. Rains, 228 Ky. 677, 15 S. W. (2d) 496. Furthermore, as is stated in Commercial Tribune Publishing Company v. Haines, 228 Ky. 483, 15 S. W. (2d) 306, 307:

"It is a fundamental principle in the law of libel and slander that the defamatory matter complained of should be construed as a whole, and that the language employed therein should receive its common and ordinary acceptation in the light of the conditions and circumstances under which it was published. Also, that defamatory matter, printed or spoken, charging an officer with neglect of his official duties, so as to disqualify him for their punctual performance and to render him unfit to discharge them, is actionable per se, and it is especially so when the defamation is printed and circulated, and the same principle applies where the language is defamatory of one in his profession."

See, also, Smallwood v. York, 163 Ky. 139, 173 S W. 380, L. R. A. 1915D, 578.

With these principles in mind, we look to the publication before us. We cannot assent to the argument of the appellees that the phrase, "Ray Smith County Attorney gets 40% of the fine plus $5.00 cost," should be regarded independently cf the other portions of the sign and that as so disassociated it speaks the truth. The statute so provides in certain cases. Section 133a-1.

Such separation was never intended by those who made or caused the warning and statements to be made. The plaintiff, Ray Smith, is definitely therein pointed out as a "fee grabber" and the portion of a fine received by him as the fee so "grabbed" is stated. The question is this: Is it libelous to publish, maliciously and falsely, that a prosecuting attorney who is lawfully entitled to certain fees upon conviction of persons of penal offenses is a "fee grabber"?

In the development of our language the meaning of words changes for better or for worse. In the fullness of time a word comes to have a meaning difficult to trace from its root and acquires in the common language an additional meaning to that which it originally had. Ordinarily, its particular meaning depends on association. The dictionaries give us many definitions of the word "grab." One of the meanings is: "An act or practice of appropriating unscrupulously, as in politics." Webster's New International Dictionary. Again: "A seizure or acquisition by violent or unscrupulous means." New Century Dictionary. "To seize, grasp or snatch forcibly or suddenly with the hand, hence to take possession of suddenly, violently or dishonestly." Funk and Wagnalls Standard Dictionary. Of like character is the word "graft." It becomes a word of disrepute when used in connection with a public office or officer. Concerning it we wrote, in Dixon v. Campbell, 133 Ky. 663, 118 S. W. 929, 930:

> "The word 'graft' has a well-defined popular meaning at this time. It means the fraudulent obtaining of public money unlawfully by the corruption of public officers. * * * To charge an official with graft is to charge him with want of integrity. The article in question, if true, would necessarily destroy the respect of the people of Leslie county for the county judge. Its necessary tendency was to degrade him in public estimation, for no one would regard him as a capable and upright official who believed the statements of this article to be true. The publication was therefore actionable per se, and the circuit court erred in sustaining the demurrer to the petition."

Though the words "crook" or "crooked" have a harmless meaning, they are deemed injurious where applied to the conduct of an individual, for as so used the common understanding of mankind imputes a de-

famatory meaning of them, that is dishonesty. Midland Publishing Company v. Trade Journal Company, 108 Mo. App. 223, 83 S. W. 298; Pandolfo v. Bank of Benson, 9 Cir., 273 F. 48. "Humbug" having become accepted as good English, with a well understood meaning as impostor, deceiver and cheat, it is held to be libel to falsely accuse an individual of being a "humbug." Ramharter v. Olson, 26 S. D. 499, 128 N. W. 806, Ann. Cas. 1913B, 253, and note. The publication that a person while holding a public office committed certain wrongful acts for the purpose of increasing the fees of his office has been held to charge that he performed his duties from corrupt and dishonest motives in order to obtain unlawful fees and necessarily tended to expose him to the scorn and contempt of every right-thinking person and, therefore, to be libelous per se if untrue. Eviston v. Cramer, 47 Wis. 659, 3 N. W. 392. The term "fee grabber" imports that and must take its place along with "grafter" and like disreputable words.

It seems to us that the obvious purpose and intent of the statement was to attribute to the County Attorney of Whitley County wrongful motives and purposes to obtain fees and compensation by dishonest and unscrupulous means and to charge him with participating in the prosecution of innocent travelers. The extreme manner of publication—a large bill board—imported malice. Cf. Thompson v. Adelberg & Berman, Inc., 181 Ky. 487, 205 S. W. 558, 3 A. L. R. 1594, and Brents v. Morgan, 221 Ky. 765, 299 S. W. 967, 55 A. L. R. 964, where attempts to coerce payment of debts by publication of debtors on signs were held actionable per se. It is common knowledge that in many places the speed laws are loosely enforced or not enforced at all. If the purpose was merely to warn travelers that the law was being enforced in Whitley County, resort to such invidious language as was used was unnecessary. So publicly calling the plaintiff a "fee grabber" in this association or connection inevitably resulted in disparagement of his integrity and created public contempt. It was, therefore, libelous per se if false. We are of opinion that the petition stated a cause of action and that the demurrer to it should have been overruled.

Wherefore, the judgment is reversed.