John DOE No. 1 and John Doe No. 2, Petitioners

v.

Honorable Eddy COLEMAN, Judge, Pike Circuit Court, Respondent

and

William Hickman, III, Real Party in Interest.

No. 2014–CA–000293–OA.

Court of Appeals of Kentucky.

June 20, 2014.

208

Lawrence R. Webster, Pikeville, KY, for petitioners.

Eddy Coleman, Pikeville, KY, for respondent.

Richard A. Getty, Danielle H. Brown, Lexington, KY, for real party in interest.

Before JONES, STUMBO, and VANMETER, Judges.

## OPINION AND ORDER

JONES, Judge:

Petitioners, John Doe No. 1 and John Doe No. 2, filed a petition for a writ to prohibit the trial court from enforcing an order requiring the disclosure of their identities in a defamation lawsuit. Having considered the petition for writ of prohibition, the response, and being otherwise sufficiently advised, the Court ORDERS that the petition be, and it is hereby, GRANTED.

Real Party in Interest, William Hickman, III, has served as Chair of the Pike County Airport Board of Directors since 2009. Municipal airport boards serve a governmental function and are composed of members appointed by the local mayor pursuant to statute. *See Comair, Inc. v. Lexington–Fayette Urban County Airport Corp.,* 295 S.W.3d 91, 100–01 (Ky.2009). On October 18, 2013, Hickman filed a complaint in Pike Circuit Court against several anonymous users of the website, Topix, for posting allegedly defamatory statements. Transcripts of the numerous statements at issue accompanied the complaint. The complaint alleged that the anonymous defendants recklessly "published and thereby perpetuated substantial errors and omissions that wrongfully and erroneously imputed fraud, dishonesty, criminal activity and conduct incompatible with his business, trade, profession and office . . ." and caused damage to Hickman's reputation. Following the filing of the complaint, Hickman issued subpoenas to two internet providers seeking the identities and addresses of John Doe No. 1 and John Doe No. 2. John Doe No. 1 and John Doe No. 2 filed a motion to quash the subpoena requiring the disclosure of their identities. The trial court denied the motion. This petition for writ of prohibition followed.

■ Extraordinary writs may be granted upon a showing that: (1) "the lower court is proceeding or is about to proceed outside of its jurisdiction and there is no remedy through an application to an intermediate court," or (2) "the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise," and "great injustice and irreparable injury will result if the petition is not granted." *Hoskins v. Maricle,* 150 S.W.3d 1, 10 (Ky.2004). There is no adequate remedy by appeal for an order that allows the discovery of confidential information because information cannot be recalled after it has been revealed. *Wal–Mart Stores, Inc. v. Dickinson,* 29 S.W.3d 796, 800 (Ky.2000). Our Supreme Court has stated that an extraordinary writ is available to remedy the improper discovery of information protected by the First Amendment in a defamation case. *The Lexington Herald–Leader Co. v. Beard,* 690 S.W.2d 374, 376 (Ky.1985).

■ The First Amendment of the United States Constitution prohibits the government from abridging the freedom of speech. "[P]olitical speech directed toward public officials is at the pinnacle of protected speech" under the First Amendment. *Welch v. American Publishing Co. of Kentucky,* 3 S.W.3d 724, 726 (Ky.1999). "At the heart of the First Amendment is the recognition of the fundamental importance of the free flow of ideas and opinions on matters of public interest and concern." *Hustler Magazine, Inc. v. Falwell,* 485 U.S. 46, 50, 108 S.Ct. 876, 879, 99 L.Ed.2d 41 (1988). "The sort of robust political debate encouraged by the First Amendment is bound to produce speech that is critical of those who hold public office or those public figures who are 'intimately

involved in the resolution of important public questions or, by reason of their fame, shape events in areas of concern to society at large.'" *Id.* (Quoting *Associated Press v. Walker*, decided with *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 164, 87 S.Ct. 1975, 1996, 18 L.Ed.2d 1094 (1967) (Warren, C.J., concurring in result)). "Such criticism, inevitably, will not always be reasoned or moderate; public figures as well as public officials will be subject to 'vehement, caustic, and sometimes unpleasantly sharp attacks ...'" *Id.* at 51. The First Amendment also protects anonymous speech. *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995). Speech on the internet stands on equal footing with other forms of speech. *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 870, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997).

 Not all speech directed at public officials enjoys First Amendment protection because there is no protection for obscene speech, fighting words, and defamation. *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571–72, 62 S.Ct. 766, 769, 86 L.Ed. 1031–35 (1942). Speech is defamatory if it tends to "(1) bring a person into public hatred, contempt or ridicule; (2) cause[s] him to be shunned or avoided; or, (3) injure[s] him in his business or occupation." *Yancey v. Hamilton*, 786 S.W.2d 854, 858 (Ky.1989). "[A] written publication is libelous which falsely charges or imputes dishonesty or engagement in fraudulent enterprises of such a nature as reflects upon the character and integrity of a person and to subject him to the loss of public confidence and respect." *Id.* (Quoting *Smith v. Pure Oil Co.*, 278 Ky. 430, 128 S.W.2d 931, 932 (1939)). A defamatory statement about a public figure is actionable only if the statement is shown to have been made with actual knowledge of its falsehood or with reckless disregard of the truth. *Sparks v. Boone*, 560 S.W.2d 236, 238 (Ky.App.1977).

 However, a defamatory statement that consists of pure opinion is absolutely privileged and not actionable. *Yancey*, 786 S.W.2d at 857. The Court explained:

The Restatement distinguishes between "pure" opinion and "mixed" expressions of opinion. Pure opinion, which is absolutely privileged, occurs where the commentator states the facts on which the opinion is based, or where both parties to the communication know or assume the exclusive facts on which the comment is clearly based. In contrast, the mixed type "is apparently based on facts regarding the plaintiff or his conduct that have not been stated by the defendant or assumed to exist by the parties to the communication."

The significant difference between the two lies in how the recipient is affected by the communication. With mixed opinion,

"if the recipient draws the reasonable conclusion that the derogatory opinion expressed in the comment must have been based on undisclosed defamatory facts, the defendant is subject to liability. The defendant cannot insist that the undisclosed facts were not defamatory but that he unreasonably formed the derogatory opinion from them.... [T]he meaning of a communication is that which the recipient correctly, or mistakenly but reasonably, understands that it was intended to express."

*Id.* (Internal citations omitted). The court "must determine whether an expression of opinion is capable of bearing a defamatory meaning because it may reasonably be understood to imply the assertion of undisclosed facts which may justify the expressed opinion about the undisclosed

facts." *Id.* Alleged defamatory statements should be construed as a whole. *Id.* In *Welch*, 3 S.W.3d at 730, the Court found that a statement regarding "whether money was wasted or spent for desirable city purposes is a matter of opinion." Further, "generalized rhetoric bandied about in a political campaign is not the language upon which a defamation lawsuit should be based, but instead is political opinion solidly protected by the First Amendment." *Id.*

■■■ This Court must strike a balance between the First Amendment right to anonymous speech and the right of those harmed by anonymous speech to seek legal redress. The United States Supreme Court has not provided guidance for the discovery of the identity of anonymous internet speakers in a defamation case. Many jurisdictions have followed variations of the tests set forth in *Dendrite Int'l, Inc. v. Doe No. 3*, 342 N.J.Super. 134, 775 A.2d 756 (Ct.App.Div.2001), and *Doe v. Cahill*, 884 A.2d 451 (Del.2005). Other jurisdictions have addressed this issue through their rules of discovery and summary judgment. *Maxon v. Ottawa Pub. Co.*, 402 Ill.App.3d 704, 341 Ill.Dec. 12, 929 N.E.2d 666 (2010); *Thomas M. Cooley Law School v. Doe 1*, 300 Mich.App. 245, 833 N.W.2d 331 (2013). Still other jurisdictions have addressed the issue through rules of discovery and motions to dismiss. *Lassa v. Rongstad*, 294 Wis.2d 187, 718 N.W.2d 673 (2006).

Having reviewed this jurisprudence from our sister state courts, our Rules of Civil Procedure and our common law, we believe that the test set forth in *Dendrite Int'l, Inc. v. Doe No. 3*, 342 N.J.Super. 134, 775 A.2d 756 (Ct.App.Div.2001) as modified by *Doe v. Cahill*, 884 A.2d 451 (Del.Sup.Ct. 2005), strikes the proper balance between the First Amendment right to engage in protected anonymous speech and the right to seek legal redress for actionable defamatory speech.

■■■ Accordingly, we hold that before a plaintiff can compel disclosure of the identity of an anonymous internet speaker, the plaintiff must:

(1) undertake reasonable efforts to notify the anonymous defendant that he is the subject of a subpoena or application for an order of disclosure and must withhold action in order to allow the anonymous defendant an opportunity to respond; and

(2) set forth a prima facie case for defamation under the summary judgment standard as set forth in Justice Keller's concurring opinion in *Welch v. American Publishing Co. of Kentucky*, 3 S.W.3d 724, 731 (Ky.1999), to the extent those elements are under his control.

*See generally Cahill*, 884 A.2d at 461.

■■■ In order to present a prima facie case for defamation, the plaintiff who is a public figure must produce evidence that "(1) the language ... [at issue] contains facially defamatory statements; (2) those facially defamatory statements are false; and (3) the persons responsible for those statements acted 'with knowledge that [the statements were] false or with reckless disregard of whether [they were] false or not.'" *Welch*, 3 S.W.3d at 731. (Keller, J. concurring in part, dissenting in part.) (Quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 280, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)). Elements one and two are elements that the plaintiff should be able to establish without discovery of the speaker's identity. The third element, however, is likely to be difficult, if not impossible, for a public figure plaintiff to satisfy without knowing the speaker's identity. Therefore, we hold that a public figure defamation plaintiff must only plead and prove facts with regard to the first two elements to compel disclosure of the

speaker's identity, *i.e.,* "the elements of the claim that are within his control." *Cahill,* 884 A.2d at 464.

Based on the foregoing, we conclude that John Doe No. 1 and John Doe No. 2 have demonstrated entitlement to a writ because the trial court ordered disclosure of their identities without requiring Hickman to demonstrate a prima facie case for defamation under the standard set forth above. Therefore, the Court ORDERS that the petition for writ of prohibition be, and it is hereby, GRANTED. The trial court is DIRECTED to conduct an analysis consistent with the standard set forth in this order.

ALL CONCUR.