RENDERED:  JULY 29, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0039-MR

VONDREGUS BAILEY                                                          APPELLANT

v.
APPEAL FROM HARDIN CIRCUIT COURT
HONORABLE KEN M. HOWARD, JUDGE
ACTION NO. 19-CR-00098

COMMONWEALTH OF KENTUCKY                                     APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, TAYLOR, AND L. THOMPSON, JUDGES.

CALDWELL, JUDGE:  Vondregus Bailey ("Bailey") appeals his conviction for

indirect criminal contempt and sentence of ninety (90) days' incarceration to be

served following completion of a five (5) year sentence in the underlying matter

which brought him before the court.  Having reviewed the record, the briefs of the

parties, and the order of the trial court, we affirm.

# FACTS

Bailey was indicted for receiving stolen property over $10,000 and being a persistent felony offender (PFO) in the first degree in the Hardin Circuit Court in 2019. Bailey, who is not from Kentucky, was pulled over on Interstate 65 in Elizabethtown while driving a stolen vehicle. During his trial in 2019, he reached an agreement with the prosecution which resulted in the entry of a guilty plea to the receiving stolen property charge and dismissal of the PFO charge. He was sentenced to imprisonment of five (5) years. At all times, he was represented by appointed counsel.

Bailey timely filed a *pro se* motion for shock probation, which was denied on October 2, 2019. A subsequent motion for shock probation was filed by counsel, which was denied on November 19, 2019. In response to the second denial, Bailey filed a *pro se* "Motion Requesting for Clarity for Racism/Racket." In this "motion," Bailey used vulgar words to refer to the judge and made allegations of unfairness in sentencing based on his race, not his criminal history.[1] The judge entered an order transferring the matter to another division and declaring the letter to be an example of indirect criminal contempt.

---

[1] In the document, Bailey referred to the presiding judge at the time, the Honorable Kelly Mark Easton, as a "racist motherfucker" and "a piece of shit" and alleged, despite a decades-long criminal history including multiple prior felony convictions in various states, that he was denied shock probation only because of his race, and alleged white defendants were granted probation or lower sentences than black defendants before the Hardin Circuit Court.

An order was entered by the Second Division, which received the case, scheduling a hearing for January 21, 2020. An evidentiary hearing was scheduled but was delayed several times. On June 23, 2020, a hearing was held. Bailey appeared telephonically, while his appointed counsel, the court, and prosecutor appeared via Zoom.[2] Counsel asked for a continuance of the hearing so that Bailey might be transported as the two could not maintain confidential communications because his client was at a county jail facility across the state, and he was in his office in Bullitt County appearing via Zoom. The court refused such request but allowed counsel time to file briefs on the matter. The court took judicial notice of the letter sent by Bailey to the judge who presided over his trial and denied him shock probation, which constituted the evidence in the matter. Bailey never disclaimed authorship of the letter. Following the hearing, counsel for Bailey filed a brief with the court, but the Commonwealth did not.

In November, the Second Division entered an order finding Bailey to be guilty of indirect criminal contempt. In the order, the court formally took judicial notice of the "motion" Bailey had filed and found that it was beyond question that Bailey had been the author of the motion, comparing the penmanship and form with various *pro se* pleadings Bailey had previously filed in the matter.

---

[2] The hearing occurred during the novel coronavirus pandemic when the Court of Justice was closed to in-person appearances by the Chief Justice of the Kentucky Supreme Court via Administrative Order 2020-43.

The court went on to find that by clear and convincing evidence the contents of said "motion" brought the court into disrepute and such was indirect criminal contempt. The court sentenced Bailey to ninety (90) days for indirect criminal contempt.

The matter appeared again on the court's docket after the entry of the order, and it was determined that Bailey had been paroled and was no longer in the Commonwealth. He filed a motion for belated appeal through counsel in January of 2021, which was granted by this Court. Having reviewed the record, the briefs of the parties, and the order of the court, we affirm.

**STANDARD OF REVIEW**

A trial court has broad discretion in managing the courtroom and utilizing the tools it possesses to do so. Because indirect criminal contempt involves the imposition of criminal penalties, on review we apply an abuse of discretion standard. This is in accord with the review required in a typical criminal case involving review of actions when the court has a panoply of choices in how to proceed.

> While it may well be appropriate to recognize a court's very broad discretion to respond as needed to the petty sort of direct contempts that threaten the orderliness and decorum of the court's proceedings, it is a different matter entirely to say that a court can impose substantial criminal penalties for indirect contempts, with all the stigma and other collateral consequences attending such penalties, without being subject to the ordinary criminal-

-4-

judgment standards of review. If the constitutional rights the Supreme Court has held are applicable to criminal contempt proceedings are to provide the protection they are meant to provide, then appellate review of their application in such proceedings must be more searching than the highly deferential standard of review adopted by the Court of Appeals in this case. Appellate review of criminal contempt sanctions should be commensurate with the review provided in regular criminal cases of a comparable seriousness, as suggested by the penalties imposed.

*Cabinet for Health & Fam. v. J.M.G.*, 475 S.W.3d 600, 624 (Ky. 2015).

When reviewing a trial court action for an abuse of discretion, we look toward whether the trial court's ruling is reasonable, appropriate, and supported by the law.

Our Supreme Court has defined *abuse of discretion* as conduct by a court in acting arbitrarily, unreasonably, unfairly, or in a manner "unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

*Kentucky River Cmty. Care, Inc. v. Stallard*, 294 S.W.3d 29, 31 (Ky. App. 2008).

## ANALYSIS

A person can be held to be in either civil or criminal contempt by a court. A review of the types of contempt and the behavior each seeks to ameliorate or punish follows.

An explanation of a court's contempt powers is in order. "Contempt is the willful disobedience toward, or open disrespect for, the rules or orders of a court." Contempt can be classified as civil or criminal. Civil contempt is

-5-

when someone fails to follow a court order to do something.  That something is usually for the benefit of a party litigant (*e.g.*, pay child support, allow visitation, fix something by a certain date, move a driveway, clean up a spill, close a business by a certain hour, provide discovery, etc.).  A judge may incarcerate someone for civil contempt in order to motivate the person to obey the court order, but the contemptuous one is entitled to be released upon compliance with the court's order.  Criminal contempt, on the other hand, is when a person disobeys a court order out of disrespect for the rules or orders of court.  A contemptuous person can be incarcerated for criminal contempt; but unlike civil contempt, the primary purpose of criminal contempt is to punish the contemptuous conduct.

> Criminal contempt can be either direct or indirect. A direct contempt is committed in the presence of the court and is an affront to the dignity of the court.  It may be punished summarily by the court, and requires no fact-finding function, as all the elements of the offense are matters within the personal knowledge of the court.  *In re Terry*, 128 U.S. 289, 9 S. Ct. 77, 32 L. Ed. 405 (1888). Indirect criminal contempt is committed outside the presence of the court and requires a hearing and the presentation of evidence to establish a violation of the court's order.  It may be punished only in proceedings that satisfy due process. *Cooke v. United States*, 267 U.S. 517, 45 S. Ct. 390, 69 L. Ed. 767 (1925).

*Gormley v. Jud. Conduct Comm'n*, 332 S.W.3d 717, 725-26 (Ky. 2010) (citations and footnotes omitted).

Bailey filed a "motion" which contained contemptuous language, so we find that this is an example of indirect criminal contempt not committed in the

presence of the court. We find that the hearing afforded Bailey proper due process as he was given the chance to defend against the allegation of contempt. The fact he may not have availed himself of that opportunity matters not and he does not complain on appeal that his due process rights were violated.

On appeal, Bailey insists that the finding of contempt violated his right to freedom of speech. He argues that the terms "racist motherfucker" and "piece of shit" were not obscenity. Obscenity carries no protection as "political speech," while speech which is not profane is entitled to such protection. *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571-72, 62 S. Ct. 766, 769, 86 L. Ed. 1031 (1942). We do not have to decide whether the vulgar language employed by Bailey constituted obscenity not entitled to First Amendment protections, because the accusations made utilizing the profanity are not entitled to such protections.

As pointed out by the Commonwealth, it was the inclusion of defamatory allegations of unfairness and collusion against a sitting judge which constitutes the contempt in Bailey's missive. Speech is "defamatory if it tends to: '(1) bring a person into public hatred, contempt or ridicule; (2) cause[s] him to be shunned or avoided; or, (3) injure[s] him in his business or occupation.'" *Yancey v. Hamilton*, 786 S.W.2d 854, 858 (Ky. 1989) (quoting *McCall v. Courier-Journal and Louisville Times Co.*, 623 S.W.2d 882, 884 (Ky. 1981)). Defamatory speech is

not protected by the First Amendment[3] and if it is made with reckless disregard for its truthfulness, is actionable.

> A defamatory statement about a public figure is actionable only if the statement is shown to have been made with actual knowledge of its falsehood or with reckless disregard of the truth. *Sparks v. Boone*, 560 S.W.2d 236, 238 (Ky. App. 1977).

*Doe v. Coleman*, 436 S.W.3d 207, 210 (Ky. App. 2014).

In the offending filing, Bailey accused the judge who denied him shock probation of doing so because of his race, accusing him of treating white defendants before his court accused of much more serious crimes more favorably than Bailey was treated. He accused the judge of colluding with the prosecution. Both of these baseless allegations cast the judge in a bad light. *See Grant v. Dortch*, 993 S.W.2d 506, 509 (Ky. App. 1999).

The record indicates that Bailey was from Mississippi and Indiana, having spent significant parts of his life in both states, and having spent significant times in the correctional facilities of both locales. He was simply driving through

---

[3] The freedom of speech has its limits; it does not embrace certain categories of speech, including defamation, incitement, obscenity, and pornography produced with real children. *See Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, 127, 112 S. Ct. 501, 116 L. Ed. 2d 476 (1991) (KENNEDY, J., concurring).

*Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 245-46, 122 S. Ct. 1389, 1399, 152 L. Ed. 2d 403 (2002).

Kentucky on the expressway in a stolen vehicle. Bailey had no prior knowledge of the judge and knew of him only from the time spent in the courtroom during his trial and its pendency. Thus, he had no basis for the allegations in the "motion." The bare defamatory allegations, peppered as they were with obscenity, were contemptuous of the court.

## CONCLUSION

The order of the Second Division so finding and sentencing Bailey to ninety (90) days' imprisonment for such is affirmed.


ALL CONCUR.


BRIEFS FOR APPELLANT:

Kayla D. Deatherage
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Matthew R. Krygiel
Assistant Attorney General
Frankfort, Kentucky