Gregory Lynn YANCEY, Movant,

v.

Fred H. HAMILTON, et al., Respondents.

No. 88–SC–693–DG.

Supreme Court of Kentucky.

Sept. 7, 1989.

Rehearing Denied April 26, 1990.

J.B. Rees, Gregory K. Berry, Florence, Ky., Raymond S. Bogucki, Augusta, Ky., for appellant.

Asa Rouse, Rouse, Benson & Koenig, P.S.C., Walton, Ky., for respondent, Fred H. Hamilton.

Richard G. Meyer, Deters, Benzinger & LaVelle, Covington, Ky., for remaining appellees.

STEPHENS, Chief Justice.

The principal issue to be decided on this appeal is whether the publishing of a remark that an individual was a "con artist" is absolutely privileged as a statement of opinion under the First Amendment to the United States Constitution.

Movant Gregory Yancey sued respondents Fred Hamilton and *The Kentucky Post* and several of its employees in Boone Circuit Court for libel and invasion of privacy. The genesis of this action began with movant's arrest for double murder. *The Post* ran a feature story about Yancey's background as a "sidebar" to the news article about his arrest. Several neighbors and acquaintances were interviewed, among them, Fred Hamilton. *The Post* printed the following information and statements from the interview.

"Fred Hamilton of Verona has known the family for years. 'It was really hard on Greg when his grandmother (Anna Yancey) died. That was November 1978. She thought the world of him About the time his grandmother died, his parents separated and his world just seemed to fall apart.

'The family attended New Bethel Baptist Church in Verona,' Hamilton said. 'Greg sang in the choir. I remember "four of [sic] five of them ..." decided to go to Cumberland to take up the ministry. He could preach. *He was a smooth talker. He was a con artist. I would never lend him money.*' "

It was the last three statements to which movant objected. Yancey was later released on the murder charges, as he was wrongly suspected.

Granting respondents' joint pre-trial motion for summary judgment, the trial court held as a matter of law that Hamilton's comments were clearly statements of opinion, which *The Post* had an absolute privilege under the First Amendment to publish. The Court of Appeals affirmed the circuit court judgment. This Court granted discretionary review upon Yancey's motion.

Movant actually presents two allegations of error, both of which we will address. First, he claims the courts below erred in finding respondent published an absolutely privileged statement of opinion. Second, Yancey contends the trial court improperly dismissed his action without addressing his invasion of privacy claim; and the Court of Appeals erred in finding this was only harmless error, if any.

## I. WAS RESPONDENT'S PUBLICATION OF A REMARK THAT YANCEY WAS A "CON ARTIST" A PUBLICATION OF A STATEMENT OF OPINION AS A MATTER OF LAW?

Appellant takes issue with the trial court's finding that respondents' statement calling movant a "con artist" is a constitutionally protected statement of opinion. In *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), the United States Supreme Court elevated the common law privilege of "fair comment," which protected some statements of opinion about public issues from defamation actions, to constitutional status. The Court said:

"Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas. But there is no constitutional value in false statements of fact. Neither the intentional lie nor the careless error materially advances society's interest in 'uninhibited, robust and wide-open' debate on public issues." *Id.* at 340, 94 S.Ct. at 3007.

The majority of federal circuits have accepted the *Gertz* dicta as controlling law, and have thus conferred absolute immunity on the publication of clear statements of opinion.[1] In the absence of definitive guidelines for distinguishing statements of fact from statements of opinion, or for otherwise determining whether a mixed statement falls into the category of protected speech, courts have struggled to fashion and apply various tests.[2]

The trial court in the case at bar relied heavily on *Ollman v. Evans*, 750 F.2d 970 (D.C.Cir.1984), *cert. denied*, 471 U.S. 1127, 105 S.Ct. 2662, 86 L.Ed.2d 278 (1985), to determine whether Hamilton's statements about movant were actionable. Under the four-part test set out in *Ollman*, an alleged defamatory statement has sufficient factual content to be defamatory if: (1) the common usage of the statement "has a precise core of meaning for which a consen-

[1]. See cases listed in *Ollman v. Evans*, 750 F.2d 970, 974 n. 6 (D.C.Cir.1984), *cert. denied*, 471 U.S. 1127, 105 S.Ct. 2662, 86 L.Ed.2d 278 (1985); *Restatement (Second) of Torts* (Appendix) § 566 reporter's notes on comment c (1987). *Gertz* was cited with approval in *Bose Corporation v.*

*Consumers Union of United States, Inc.*, 466 U.S. 485, 504, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984).

[2]. *See generally* D. Elder, *Kentucky Tort Law: Defamation and the Right to Privacy* § 2.04 (1983); Note, "The Fact–Opinion Determination in Defamation," 88 *Columbia L.Rev.* 809 (1988).

sus of understanding exists," (2) the statement is objectively verifiable, (3) the full content of the statement would "influence the average reader's readiness to infer that a particular statement has factual context," and (4) the broader content in which the statement appears would signal the reader that the statement at issue has factual context. *Id.* at 979. *Ollman* held that the "distinction between opinion and fact is a matter of law." *Id.* at 978. Accordingly, the trial judge in the case *sub judice* applied the *Ollman* test to the legal issue to be decided. He found the statement that movant was a "con artist" to be mere opinion because the meaning of the term was indefinite, the truth or falsity of the label was not easily verifiable, the article as a whole was full of opinion about movant by those who knew him, and the article was a background piece to the factual article reporting movant's arrest for murder.

If we chose to adopt the *Ollman* approach used by the trial court, it is not at all clear that, as a matter of law, we would concur in the trial court's determination that respondents' statements amounted to a privileged expression of opinion. Nevertheless, we reject the *Ollman* test as applied by the trial court and, further, we disagree with the conclusion it reached.

■ The drafters of *The Restatement (Second) of Torts* developed a somewhat different approach to the fact-opinion distinction which we believe to be sound, and thus hereby adopt.

"A defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory fact as the basis for the opinion." *Restatement (Second) of Torts* § 566 (1977) [hereinafter *Restatement*].

The *Restatement* distinguishes between "pure" opinion and "mixed" expressions of opinion. Pure opinion, which is absolutely privileged, occurs where the commentator states the facts on which the opinion is based, or where both parties to the communication know or assume the exclusive facts on which the comment is clearly based. *Restatement* § 566 at comment b. In contrast, the mixed type "is apparently based on facts regarding the plaintiff or his conduct that have not been stated by the defendant or assumed to exist by the parties to the communication." *Id.*

The significant difference between the two lies in how the recipient is affected by the communication. With mixed opinion, "if the recipient draws the reasonable conclusion that the derogatory opinion expressed in the comment must have been based on undisclosed defamatory facts, the defendant is subject to liability. The defendant cannot insist that the undisclosed facts were not defamatory but that he unreasonably formed the derogatory opinion from them.... [T]he meaning of a communication is that which the recipient correctly, or mistakenly but reasonably, understands that it was intended to express." *Id.* at comment c.

■ The *Restatement* takes the position that the court "must determine whether an expression of opinion is capable of bearing a defamatory meaning because it may reasonably be understood to imply the assertion of undisclosed facts which may justify the expressed opinion about the undisclosed facts." *Id.* We have previously held that alleged defamatory statements "should be construed as a whole." *McCall v. Courier-Journal and Louisville Times Co.*, Ky., 623 S.W.2d 882 (1981), *cert. denied*, 456 U.S. 975, 102 S.Ct. 2239, 72 L.Ed.2d 849 (1982); *see also Restatement* § 615 comment d (factors considered by court and jury). Considering then, the statement here in contention, we find that in the whole context of its publication, Hamilton's comments created a reasonable inference that they were justified by undisclosed defamatory facts.

We agree with the trial court that the article including the alleged defamatory language was a background piece, which, when viewed in contrast to the article reporting murder charges against movant, contained a number of favorable comments concerning Yancey. Appearing in the first half of the story, Hamilton's statement recited factual information which connoted

long-standing and personal knowledge about Yancey's life. The sequence of the last four sentences is critical to our finding that the appellation "con artist" is capable of bearing a defamatory meaning. "He could preach," was a harmless statement of fact. "He was a smooth talker," seems to qualify the first observation. "He was a con artist," could also be interpreted as a less flattering reflection on Yancey's preaching abilities. But coupled with the next and last comment, "I would never lend him money," calling Yancey a "con artist" could be found to imply that the speaker had particular and articulable reasons for believing movant practiced the art of obtaining money or property from another by fraud, or was otherwise deceitful.[3]

We must next address whether the meaning is defamatory. It is possible that a jury could find the statements impute criminal conduct on movant's part. For example, one of the offenses in our penal code including deception as an element is KRS 514.040, "Theft by Deception," which reads in pertinent part:

"(1) A person is guilty of theft by deception when he obtains property or services of another by deception with intent to deprive him thereof. A person deceives when he intentionally:

(a) Creates or reinforces a false impression ...;

(b) Prevents another from acquiring information which would affect his judgment of a transaction;

(c) Fails to correct a false impression which the deceiver previously created or reinforced...." *Id.*

■ Although it is usually the court's function to determine whether a crime imputed by published statements is actionable as libel *per se*, where the words at issue are capable of more than one meaning, as they are here, the jury should decide which of the meanings a recipient of the message would attribute to it. *Deitchman v.*

*Bowles,* 166 Ky. 285, 179 S.W. 249 (1915); *Beams v. Beams,* 138 Ky. 818, 129 S.W. 298 (1910).

"A publication must be read and construed in the sense in which the readers to whom it is addressed would ordinarily understand it. If it is capable of two meanings, one of which would be libelous and actionable and the other not, *it is for the jury to say, under all the circumstances, including extraneous facts admissible in evidence, which of the two meanings would be attributed* to it by those to whom it is addressed or by whom it may be heard." *Gearhart v. WSAZ, Inc.,* 150 F.Supp. 98, (E.D.Ky. 1957), *aff'd* 254 F.2d 242 (6th Cir.1958) (emphasis added).

Even if the jury determines "con artist" is not libelous *per se*, it may still be defamatory. A writing is defamatory if it tends to:

"(1) bring a person into public hatred, contempt or ridicule; (2) cause him to be shunned or avoided; or, (3) injure him in his business or occupation." *McCall,* 623 S.W.2d at 884.

In *Smith v. Pure Oil Co.,* 278 Ky. 430, 128 S.W.2d 931 (1939), we said:

"a written publication is libelous which falsely charges or imputes dishonesty or engagement in fraudulent enterprises of such a nature as reflects upon the character and integrity of a person and to subject him to the loss of public confidence and respect." *Id.* 128 S.W.2d at 932.

■ We hold that the statement complained of is capable of bearing a defamatory meaning. It is for the jury to determine, on the basis of competent evidence, whether a defamatory meaning was attributed to it by those who received the communication. The terms should be construed in their most natural meaning and should be "measured by the natural and

---

**3.** *Webster's Third New International Dictionary* (1966) defines "con" as used in this context as follows:

"con; conned; conning; cons
(1): to swindle esp. by the confidence game: deceive, cheat ...

(2): to persuade or lure (a person) to the advantage of the persuader: trick, fool ...
(3): cajole, blarney, softsoap ...."
To "swindle" is to "obtain money or property from one by fraud or deceit; to practice imposture for gain." *Id.*

probable effect on the mind of the average lay reader." *McCall*, 623 S.W.2d at 884.

If the jury does find that the publication of the statement that movant was a "con artist" was understood by readers to be defamatory, they will, of course, have to find falsity and the requisite degree of fault in order to impose liability on the defendants. It is the truth of the facts underlying the statement that movant is a "con artist" which will be in issue. *Restatement* § 566 comment f., § 581A comment c.

■ As to fault, a plaintiff who is a private individual and not a public official or a public figure may recover on a showing of simple negligence on the part of a media defendant, even where the publication was a matter of concern to the public. *McCall*, 623 S.W.2d at 886. However, although it is not properly before us, an issue was raised at oral argument concerning movant's possible status as a "limited public figure."

■ Respondents contend that Yancey's arrest was predicated on his confessing to the murders for which he was later arrested. If, in fact, by this act or any other, movant voluntarily injected himself into the public controversy or concern, and thereby became "a public figure for a limited range of issues", *Gertz*, 418 U.S. at 352, 94 S.Ct. at 3013, the actual malice standard of *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), must be met in order for movant to prevail at trial. One's arrest alone on a matter of public interest, however, is not sufficient to raise a private individual to the status of even a limited public figure. *See Rosenbloom v. Metromedia, Inc.*, 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971).

As the record is silent on whether movant can be considered a public figure for any purpose, a suggestion which Yancey disputes, this issue must also be considered at trial. It is the function of the trial judge to determine whether movant can be considered a public figure. *Logan v. District of Columbia*, 447 F.Supp. 1328, 1331 (D.D. C.1978); *see Rosenblatt v. Baer*, 383 U.S.

75, 88, 86 S.Ct. 669, 677, 15 L.Ed.2d 597 (1966). However, where the facts on which the determination is to be made are in dispute, they are subject to the determination of the jury. *Restatement* § 580A comment c.

■ In this case, if the issue of whether Yancey is a public or a private figure arises, the jury must decide, based on the evidence before it, whether movant confessed to these crimes and thereby injected himself into the vortex of controversy by publicly confessing to heinous crimes of murder. The resolution of this issue will determine whether respondents will be held to a standard of fault based upon negligence or actual malice.

In summary, we hold that under the *Restatement* test for distinguishing statements of fact from expressions of opinion, the remark that movant was a "con artist" was capable of bearing a defamatory meaning. Upon the trial of this case, should it so proceed on remand, the jury must decide whether the communication in question actually conveyed a defamatory message to the reader. The jury will also determine whether facts exist to support a finding that movant was a public figure.

## II. DID THE TRIAL COURT ERR IN FAILING TO ADDRESS THE VIABILITY OF MOVANT'S INVASION OF PRIVACY CLAIM?

The trial court failed to address movant's tort-based invasion of privacy claim when it granted respondents' motion for summary judgment. The Court of Appeals found there was no actionable defamation in *any* form, thus if the trial court erred by not specifically ruling on the tort claim, it was harmless error at worst. We disagree.

Movant contends that the publication at issue placed him before the public in a false light. Our Court recognized this cause of action within the tort of invasion of privacy in *McCall v. Courier–Journal and Louisville Times Company*, Ky., 623 S.W.2d 882, 887–88 (1981). Therein we specifically rejected the Court of Appeals' position that if a publication deals with a matter of public interest or concern, it is not subject

to the tort of invasion of privacy. *Id.* at 888. Nevertheless, we did hold that where material concerning a private individual was also of public interest, "[r]ecovery in such a situation was limited to those false publications which were made upon a showing of knowledge of the falsity of the statements or a reckless disregard as to the truth." *Id.*

By our analysis of United States Supreme Court precedent in *McCall,* we felt compelled to adopt the actual malice standard in false light invasion of privacy cases involving private individuals and public issues. *See Time, Inc. v. Hill,* 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967); *but see Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), D. Elder, *super,* § 3.09 at 457–59. Although we expressed a preference for simple negligence as the standard of fault in such cases, *McCall,* 623 S.W.2d at 888, we are not prepared to overrule *McCall* on the basis of speculation about the high court's parting ways with established precedent.[4]

■ Therefore, to prevail on his invasion of privacy claim, Yancey will have to prove respondents either knew of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which movant was placed. The actual malice standard will apply regardless of Yancey's status as a private individual or a public figure. Nevertheless, the applicability of this higher fault standard does not necessarily foreclose movant's success at trial, and he will have the opportunity to pursue his false light claim when this case is returned to the trial court.

The judgment of the Boone Circuit Court and the opinion of the Court of Appeals are reversed, and this cause is remanded for further proceedings consistent with this opinion.

COMBS, GANT, LAMBERT, LEIBSON and VANCE, JJ., concur.

WINTERSHEIMER, J., dissents in a separate dissenting opinion.

**WINTERSHEIMER, Justice, dissenting.**

I respectfully dissent because the decisions of the Court of Appeals and the circuit court were correct as to whether a newspaper can publish the opinion of a private citizen and not expose either party to a suit for defamation or invasion of privacy under these circumstances.

Yancey was arrested 13 days after a brutal double homicide and following his false confession to a relative that he had committed the murders. The newspaper clearly quotes the statements of various neighbors that this man was a smooth talker, a con artist and someone to whom the citizen would not lend money. It is doubtful that anyone could read this as being anything more than the person's opinion. The trial judge found that the term "con artist" is too indefinite to be considered a factual statement, and granted a summary judgment citing the authority of *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974) and *Ollman v. Evans,* 750 F.2d 970 (D.C.Cir.1984). The Court of Appeals affirmed.

There is a fine line as to whether the public nature and the heinousness of the crimes give the newspaper the right to interview and publish the opinions that were expressed about Yancey's background. However, it does seem clear that the phrase "con artist" is a statement of opinion rather than a statement of fact. It is well settled constitutionally that statements of opinion cannot form the basis of a claim for defamation. *Gertz, supra; Cf. Haynes v. McConnell,* Ky.App., 642 S.W.2d 902 (1982).

It is clear from the imprecise language used by Hamilton, the personal interview style of the article and the fact that the story was a character profile rather than a "news" story, that the description of Yancey as a "con artist" comes within the protection for an expression of an opinion. The publication of such an opinion is not

---

**4.** In *Hustler Magazine v. Falwell,* 485 U.S. 46, 108 S.Ct. 876, 882, 99 L.Ed.2d 41 (1988), the Supreme Court spoke disparagingly of its

" 'blind application' of the *New York Times* standard [in] *Time, Inc. v. Hill....*"

the basis for an action in defamation or invasion of privacy. Such an issue is exclusively a matter of law for determination by the court with no factual issue requiring a jury determination. The right of an individual to hold and freely express a personal opinion has long been recognized as an essential privilege in our constitutional system of government. Under the circumstances presented here, the publication of such a personal opinion is not actionable. The Court of Appeals and the circuit court were correct. *Ollman* correctly summarizes the applicable law.