MAZE, JUDGE:
This appeal arises from a Clark Circuit Court's unanimous jury verdict awarding the Appellee, Ralph Alvarado, $125,000 in compensatory damages and $75,000 in punitive damages for defamation and false light. After a careful review of the record, we reverse.
Background
In October 2014, Dr. Ralph Alvarado was running for election to the Kentucky Senate against the incumbent, R.J. Palmer. Palmer ran a thirty-second ad criticizing Dr. Alvarado's opposition to Kentucky legislation intended to regulate the prescribing of controlled substances. The ad included spliced video footage from videoed *370 courtroom proceedings in Montgomery County. The ad stated:
Narrator: Medicaid/Medicare Millionaire Dr. Ralph Alvarado bills the government hundreds of thousands of dollars a year ... and has hauled in the cash at three times the national average.
Judge: What's he on?
Police Officer: Oxycontin.
Judge: Where's it from?
Defendant: Dr. Ralph Alvarado. The one running for State Senate.
Judge: The one running for Senator?
Defendant: Yes.
Judge: Oh my Lord.
Narrator: It's no wonder Ralph Alvarado called Kentucky's Pill Mill Law a "lousy piece of legislation" ... He's getting rich off addiction.
Police Officer: $3,000 worth of Oxycodone.
Judge: You have got to be kidding me!
While the words and phrases used in the ad were spoken in court, the ad's content was spliced resulting in a re-ordering of the statements. The actual courtroom footage included all of these comments, but in a slightly different order. For example, the judge saying "Oh my Lord" was actually spoken at the beginning of the communication when asking what the defendant was taking, instead of at the end referencing Dr. Alvarado as the ad portrays.
The ad was created by Dale Emmons of Emmons and Company. Palmer gave Emmons the trial video and from that Emmons created the ad. Palmer, however, approved of the ad. The ad was aired less than two weeks before the election.[1] Dr. Alvarado ultimately initiated a civil action against Palmer, his campaign and Emmons. Emmons entered into a settlement agreement with Dr. Alvarado and was dismissed from the action. A trial was held in December 2016, in which Dr. Alvarado sued Palmer and his campaign for defamation and publicly placing a person in a false light. The jury returned a unanimous verdict in favor of Dr. Alvarado in the amount of $125,000 compensatory damages and $75,000 punitive damages. This appeal follows.
Standard of Review
On appellate review, questions of law are reviewed de novo. Kentucky Farm Bureau Mut. Ins. Co. v. Blevins , 268 S.W.3d 368, 372 (Ky. App. 2008). When reviewing a denial of a directed verdict, "[a]ll evidence which favors the prevailing party must be taken as true and the reviewing court is not at liberty to determine credibility or the weight which should be given to the evidence, these being functions reserved to the trier of fact." Lewis v. Bledsoe Surface Mining Co. , 798 S.W.2d 459, 461 (Ky. 1990). We "must determine whether the verdict rendered is 'palpably or flagrantly' against the evidence so as 'to indicate that it was reached as a result of passion or prejudice.' " Id. at 461-62 (internal citation omitted).
Analysis
On appeal, Palmer contends that as a matter of law, the advertisement was protected political speech. He also contends that the evidence presented by Dr. Alvarado was insufficient to support the jury's damages verdict and that a directed verdict should have been granted on the issue. Lastly, Palmer contends that it was an abuse of discretion for the court to refuse to grant a continuance due to the absence of a material witness.
*371 Defamation and False Light
Palmer first contends that as a matter of law, the advertisement was protected political speech regarding an existing public controversy. Alvarado alleged four claims at trial, one of which was dismissed. The three claims which were litigated for defamation and false light were:
1. The editing of the courtroom footage which placed the judge's interjection of "Oh my Lord" at a different point in the commercial than in the original footage.
2. The narration of "It's no wonder Ralph Alvarado called Kentucky's Pill Mill Law a 'lousy piece of legislation.' He's getting rich off addiction."
3. The editing of the courtroom footage which placed the comment that the defendant had "$3,000 worth of Oxycodone" at a different point in the commercial than in the original footage.
Palmer contends that these statements are either truthful or protected as political opinion.
Defamation and false light require proof of several elements. To have a successful defamation claim when the issue involves a public figure, the plaintiff must prove that the defendant made a false statement about the plaintiff and prove by clear and convincing evidence that "it was made 'with knowledge that it was false or with reckless disregard of whether it was false or not.' " Welch v. American Publishing Co. of Kentucky , 3 S.W.3d 724, 727 (Ky. 1999) (internal citations omitted). This "actual malice" standard regarding public officials was announced in New York Times Co. v. Sullivan , 376 U.S. 254, 279-80, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), where the United States Supreme Court held that constitutional guarantees require,
a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'-that is, with knowledge that it was false or with reckless disregard of whether it was false or not.
"Actual malice entails more than mere negligence. It requires that the publisher of the defamatory falsehood have 'entertained serious doubts' as to the truth of the published matter." Welch , 3 S.W.3d at 727 (internal citation omitted). In Yancey v. Hamilton , 786 S.W.2d 854, 857 (Ky. 1989), the Kentucky Supreme Court adopted the Restatement (Second) of Torts definition that, "a defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory fact as the basis for the opinion." The Court distinguished
between "pure" opinion and "mixed" expressions of opinion. Pure opinion, which is absolutely privileged, occurs where the commentator states the facts on which the opinion is based, or where both parties to the communication know or assume the exclusive facts on which the comment is clearly based. In contrast, the mixed type "is apparently based on facts regarding the plaintiff or his conduct that have not been stated by the defendant or assumed to by the parties to the communication."
Id. (citation omitted) (quoting RESTATEMENT (SECOND) OF TORTS § 566 (1977) ).
The cause of action for false light is "within the tort of invasion of privacy...." Id. at 859 (citing McCall v. Courier-Journal and Louisville Times Co. , 623 S.W.2d 882 (Ky. 1981) ). False light requires that "(1) the false light in which the *372 other was placed would be highly offensive to a reasonable person, and (2) the publisher had knowledge of, or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other was placed." McCall , 623 S.W.2d at 888. Similar to defamation, "[r]ecovery in such a situation [is] limited to those false publications which [are] made upon a showing of knowledge of the falsity of the statements or a reckless disregard as to the truth." Yancey , 786 S.W.2d at 860 (internal quotation marks and citation omitted).
The Kentucky Supreme Court has explained, based on holdings of the United States Supreme Court, that there is a higher standard of proof for public figures because "unfettered political discussion is a necessary and fundamental principle of our constitutional system of government, assuring that political decisions will be made through persuasion rather than power." Welch , 3 S.W.3d at 727. "[T]he United States Supreme Court recognized that 'erroneous statement is inevitable in free debate, and that it must be protected if the freedoms of expression are to have the "breathing space" that they "need to survive." ' " Id. (internal citations omitted). Therefore, even "minor mistakes, exaggerations, or mixed assertions of fact and opinion which may have been in the ad could not form the basis for a finding of actual malice." Id. at 730.
In Masson v. New Yorker Magazine, Inc. , 501 U.S. 496, 514, 111 S.Ct. 2419, 2431-32, 115 L.Ed.2d 447 (1991), the Supreme Court "reject[ed] the idea that any alteration beyond correction of grammar or syntax by itself proves falsity in the sense relevant to determining actual malice under the First Amendment." The Court explained that "a deliberate alteration of the words uttered by a plaintiff does not equate with knowledge of falsity for purposes of New York Times Co. v. Sullivan unless the alteration results in a material change in the meaning conveyed by the statement." Id. at 517, 111 S.Ct. 2419, 2431-32 (internal citation omitted). "[T]he statement is not considered false unless it "would have a different effect on the mind of the reader from that which the pleaded truth would have produced." Id. (internal quotation marks and citation omitted). It will not be considered false as "long as 'the substance, the gist, the sting, of the libelous charge be justified.' " Id. (internal citation omitted).
As applied to the issues in this case, we will begin with the first claim: that editing of the courtroom footage which placed the judge's interjection of "Oh my Lord" at a different point in the commercial than in the original footage was defamatory or placed Dr. Alvarado in a false light. As explained in Masson , merely rearranging or splicing the language in the ad does not constitute falsity. Instead, as long as the gist of the message is the same, it will not be considered defamatory. After watching the recorded hearing and then the commercial, it is clear without a doubt that the "gist" of the hearing is the same as what was conveyed in the ad. The ad is an accurate representation of what happened at the hearing, even if the language is spliced. The judge at the hearing clearly expressed her displeasure with Dr. Alvarado and the ad accurately reflected this. Therefore, as a matter of law, this is not evidence of actual malice or falsity and is therefore not defamation or false light.
Next, on the issue of the narration of "[i]t's no wonder Ralph Alvarado called Kentucky's Pill Mill Law a 'lousy piece of legislation.' He's getting rich off addiction[,]" we also find that as a matter of law, this statement is not defamatory or placing Dr. Alvarado in a false light. As *373 explained in Welch, "minor mistakes, exaggerations, or mixed assertions of fact and opinion which may have been in the ad could not form the basis for a finding of actual malice." Welch , 3 S.W.3d at 730. Here, the statement that Alvarado called the Pill Mill law a "lousy piece of legislation" is factually correct based on the exhibit of a published Courier-Journal article. The statement that Dr. Alvarado is "getting rich off addiction" is the type of opinion commentary protected by the First Amendment.
Lastly, Dr. Alvarado claimed that the editing of the courtroom footage which placed the comment that the defendant had "$3,000 worth of Oxycodone" at a different point in the commercial than in the original footage was defamatory and placed him in a false light. While coming close to false light, this is still within the bounds of a legitimate political purpose and does not rise to the level of actual malice. While the placement of the language does create a question regarding Dr. Alvarado, it is the type of language that is allowed in robust political debate.
"There must be limits placed on the right of individuals to attack public figures and candidates for public office, but such individuals are always subject to fair comment and criticism when they attempt to put themselves in a good light with the public. For the criticism to be actionable, however, malice must be shown." Sparks v. Boone , 560 S.W.2d 236, 239 (Ky. App. 1977). Here, as a matter of law, the statements at issue were either true or political opinion. Dr. Alvarado could not, therefore, meet the burden of proving falsity and actual malice. As explained in Welch , "[t]his opinion should not be interpreted as condoning political advertising which appears to have no purpose other than to sully the reputation of a candidate"; however, here the ad served a legitimate political purpose regarding Dr. Alvarado's opposition to the pill mill legislation. Welch , 3 S.W.3d at 730. While we agree that the ad did not portray Dr. Alvarado in a good light, that is the world of politics, a world that Dr. Alvarado voluntarily entered. If you are going to run for public office, you should assume that your opponent will attempt to discredit you. As Finley Peter Dunne wrote in his 1898 Mr. Dooley in Peace and in War collection, "politics ain't bean-bag."
We also recognize that this case involved a unanimous jury verdict, and we do not take lightly the effect of vacating that judgment. "It is beyond question that the function of the jury in interpreting the evidence and finding the ultimate facts is a fundamental American tradition which should merit constitutional recognition. Clearly the sanctity of the jury verdict is fundamental in our jury system." Kentucky Kingdom Amusement Co. v. Belo Kentucky, Inc. , 179 S.W.3d 785, 790 (Ky. 2005) (internal citation omitted). However, "[t]he finding of actual malice is subject to independent review by an appellate court." Id. at 789. We, therefore, find that as a matter of law, actual malice necessary to amount to defamation and false light does not exist in this case. The verdict is, therefore, reversed without a need to discuss the issues of damages or the denied continuance.
Conclusion
For the reasons stated herein, we reverse.
ALL CONCUR.

Nevertheless, Dr. Alvarado won the election.