NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0011n.06

Case No. 23-6032

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Jan 13, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| EQUINE PODIATRY SOLUTIONS, LLC, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| BLOOD-HORSE, LLC, | ) | DISTRICT OF KENTUCKY |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | OPINION |

Before: BATCHELDER, STRANCH, and READLER, Circuit Judges.

BATCHELDER, J., delivered the opinion of the court in which READLER, J., concurred, and STRANCH, J., concurred in part. STRANCH, J. (pp. 3–4), delivered a separate opinion concurring in part and dissenting in part.

**ALICE M. BATCHELDER, Circuit Judge**. Equine Podiatry Solutions ("EPS") sued Blood-Horse, LLC, a news organization that covers the equestrian industry, seeking damages for alleged trade libel and defamation. The district court granted Blood-Horse's motion to dismiss for failure to state a claim, and EPS appeals. We affirm.

EPS develops chemical formulas to treat laminitis in horses, a potentially deadly disease that causes inflammation in a horse's hooves, making them lame. EPS created a treatment formula called "Desmosphyrine," which it marketed as a laminitis treatment on its website and social media pages. On May 12, 2022, the Food and Drug Administration ("FDA") sent a warning letter to EPS regarding its marketing of Desmosphyrine. The letter warned EPS that the Federal Food, Drug, and Cosmetic Act ("FD&C Act") prohibits the marketing and distribution of drugs without FDA approval intended to treat animal diseases. The FDA warning letter cited numerous examples from

EPS's website and social media pages in which EPS described Desmosphyrine as laminitis treatment. Because the EPS statements established Desmosphyrine as a drug under the FD&C Act, but Desmosphyrine had not been approved by the FDA, its introduction into interstate commerce violated the FD&C Act. The warning letter highlighted the FDA's concerns and afforded EPS an opportunity to address them.

On June 15, 2022, Blood-Horse published an article on its website about the FDA warning letter sent to EPS. Blood-Horse's one page article, titled "FDA Warns Company Over Laminitis Treatment Claims," mostly quoted the FDA warning letter. EPS sued Blood-Horse arguing that this article constituted trade libel and defamation for two reasons: (1) the title's structure incorrectly suggested that the FDA warned EPS about Desmosphyrine efficacy, not its marketing claims; and (2) the article falsely claimed that EPS marketed its product as FDA approved. The district court rejected both claims because the title's structure did not affect the truth of the statement, and the article accurately reported the FDA's concerns. On appeal, EPS argues that the district court was mistaken in its assessment of the article and the warning letter.

After carefully reviewing the record, the law, and the parties' briefs on appeal, we conclude that the district court correctly set out the facts and the applicable law and correctly applied that law to those facts. The issuance of a full written opinion by this court would serve no useful purpose. Accordingly, for the reasons stated in the district court's opinion, we AFFIRM.

**JANE B. STRANCH, Circuit Judge, concurring in part and dissenting in part.** When assessing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), courts must accept all well-pleaded factual allegations as true and examine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). So, when Equine Podiatry Solutions, LLC ("Equine Podiatry") filed suit against Blood-Horse, Inc. under Kentucky's trade libel and defamation laws after Blood-Horse published an article titled, "FDA Warns Company Over Laminitis Treatment Claims," Equine Podiatry was entitled to the benefit of those well-pleaded allegations in stating a plausible claim for relief.

Among Equine Podiatry's well-pleaded allegations were several indicating that the use of terminology regarding treatment in the equine industry is highly specialized, *see, e.g,* R.1, PageID 11–12 ("What might appear to be a point of close distinction to a non-specialist was well-known to BloodHorse"), that the title of Blood-Horse's article "disparages the quality of [Equine Podiatry's product] by stating that the FDA warned Equine Podiatry over 'treatment claims," *id.*, PageID 10, and that "[a] reasonable person would read the . . . title and conclude that there was a problem with the quality of [the product]," *id*. Taken together, these allegations required the district court to accept as true that, to Blood-Horse's audience, "treatment claims" acted as a term of art referring specifically to assertions about the product's effectiveness in treating laminitis. *Lipman v. Budish*, 974 F.3d 726, 740 (6th Cir. 2020).

These allegations were not given their due weight. The district court granted Blood-Horse's motion to dismiss by reading "laminitis treatment" as interchangeable with Equine Podiatry's product's name, R.14, PageID 120 ("[A] plain reading of the text conveys that the FDA warned [Equine Podiatry] about the claims it was making regarding a laminitis treatment."), in

contravention of those well-pleaded allegations. Though that interpretation may be reasonable, it should not have controlled at this stage of the litigation. Under Kentucky law, where the words at issue are capable of more than one meaning, the meaning to ascribe to those words is a question of fact which turns on how the readers to whom the publication is addressed would ordinarily understand it. *Yancy v. Hamilton*, 786 S.W.2d 854, 858 (Ky. 1989). By alleging facts about how readers to whom the article's title was addressed would understand it, Equine Podiatry stated plausible claims to relief against Blood-Horse, and it should be afforded the opportunity to prove those allegations through discovery. With regard to the claims against Blood-Horse for its article's title, therefore, I respectfully dissent. I concur in the disposition of Equine Podiatry's other claims.