RENDERED: APRIL 18, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1268-MR

KENTUCKY DEMOCRATIC PARTY
AND RACHEL ROBERTS                                                      APPELLANTS

|   |   |
|---|---|
| v. | APPEAL FROM CAMPBELL CIRCUIT COURT<br>HONORABLE JULIE REINHARDT WARD, JUDGE<br>ACTION NO. 23-CI-00646 |

JERRY (JEROME) GEARDING                                                      APPELLEE

AND

NO. 2023-CA-1317-MR

JERRY GEARDING                                                      CROSS-APPELLANT

|   |   |
|---|---|
| v. | CROSS-APPEAL FROM CAMPBELL CIRCUIT COURT<br>HONORABLE JULIE REINHARDT WARD, JUDGE<br>ACTION NO. 23-CI-00646 |

KENTUCKY DEMOCRATIC PARTY;
COLMON ELRIDGE, III; AND
RACHEL ROBERTS                                                      CROSS-APPELLEES

OPINION
AFFIRMING IN PART AND
REVERSING IN PART

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; CALDWELL AND L. JONES, JUDGES.

JONES, L., JUDGE: These consolidated appeals arise out of a complaint for defamation and false light filed by Jerry Gearding against Rachel Roberts, the Kentucky Democratic Party (KDP), and Colmon Eldridge III, Chairman of KDP. Gearding filed his complaint in the Campbell Circuit Court in response to four political fliers and a social media post about Gearding during the 2022 campaign for Kentucky's House of Representatives in the 67th District. Upon motions for expedited relief to dismiss the complaint pursuant to Kentucky Revised Statute (KRS) 454.468, the circuit court dismissed Gearding's claims related to two fliers and the social media post, but allowed claims pertaining to two other fliers to survive. After careful review, we affirm the circuit court's dismissal of three of Gearding's claims (No. 2023-CA-1317-MR). However, we reverse the circuit court's decision to allow two of Gearding's claims to survive (No. 2023-CA-1268-MR).

**Factual and Procedural Background**

In 2022, Gearding decided he would challenge the incumbent, Roberts, for the elected position of state representative for Kentucky's 67th district.

On January 20, 2022, shortly after Gearding filed the necessary paperwork to officially enter the race, *The Cincinnati Enquirer*, a local newspaper, ran an article entitled, "Northern Kentucky statehouse candidate has multiple domestic violence arrests; candidate says he is under attack by 'Socialist Left.'" The article detailed an incident in 2018, where Gearding was arrested for domestic violence. It stated, in relevant part, that "a woman told police [Gearding] assaulted and injured her. She told police that Gearding, her boyfriend, 'punched and shoved her, knocking her head into the microwave.'" According to the article, Gearding was arrested again for violating the conditions of his bond when he returned to the home he shared with the victim after he was released from jail. The article also indicated Gearding was arrested again in 2019, and charged with domestic violence against the same victim. It stated, in relevant part, that the victim "said they were arguing and he knocked over dog food then pushed her head into the ground, which gave her a swollen bloody lip." The victim also filed for, and received, an emergency protective order (EPO) against Gearding in both 2018 and 2019. The article indicated that Gearding was given diversion for the 2018 charges, and they were eventually dismissed. The charges stemming from the 2019 incident were also eventually dismissed.

Roberts, KDP, and Eldridge seized upon the contents of the article and Gearding's arrest record. Roberts' campaign funded two political fliers that

were mailed to voters in the 67th district. KDP also mailed two additional fliers to voters. For his part, Eldridge took to social media, specifically to what was then known as Twitter, and highlighted Gearding's arrest history for domestic violence.

Gearding lost the November 2022 election to Roberts. In July 2023, he filed the underlying complaint for defamation and the tort of false light, clearly blaming the defendants for his loss. Roberts, KDP, and Eldridge immediately filed special motions for expedited relief to dismiss pursuant to KRS 454.468, which is part of Kentucky's Uniform Public Expression Protection Act (UPEPA), commonly known as Kentucky's anti-SLAPP (Strategic Lawsuits Against Public Participation) statutes. Gearding opposed the motions and argued, in part, that the UPEPA did not apply and that he had made a *prima facie* case for each element of his complaint. After the matter was fully briefed by the parties, the circuit court entered an order dismissing Gearding's claims regarding two fliers and the social media post, but allowed two other claims to survive. Roberts, KDP, and Gearding appealed. Further facts will be developed as necessary.

**Standard of Review**

The standard of review for appeals made pursuant to the UPEPA is *de novo. Davenport Extreme Pools and Spas, Inc. v. Mulflur*, 698 S.W.3d 140, 150 (Ky. App. 2024).

-4-

**Analysis**

We begin by addressing a threshold issue raised by Gearding, who argues that the UPEPA does not apply. We disagree. As explained in *Davenport*:

> [SLAPP lawsuits] are used by businesses or persons "to harass, intimidate or silence those individuals who use their right to petition." *Seiller Waterman, LLC v. Bardstown Capital Corp.*, 643 S.W.3d 68, 79 (Ky. 2022).[1] The anti-SLAPP laws generally permit "the person who exercised his or her petitioning right[ ] to file a motion to strike or dismiss because the case involves protected speech on a matter of public concern." *Id.* [*See also* KRS 454.468.]
>
> Kentucky recently adopted a version of the UPEPA, an anti-SLAPP measure. KRS 454.460-454.478. The legislation "establish[es] procedures for dismissing legal actions filed in response to a party's exercise of free speech, right to petition, or right to association." *Seiller Waterman*, 643 S.W.3d at 80. Many states have adopted anti-SLAPP legislation and other such legislation protecting free expression, "underscor[ing] that protection of the First Amendment right to petition is crucial and requires vigilance." *Id.* Kentucky's version includes an appellate mechanism that "allow[s] a party to appeal, as a matter of right, any order granting or denying a motion to dismiss filed in conjunction with this statute." *Id.*

*Davenport*, 698 S.W.3d at 150 (footnote omitted).

---

[1] *Seiller Waterman* was abrogated on other grounds by *Bluegrass Trust for Historic Preservation v. Lexington Fayette Urban County Government Planning Commission*, 701 S.W.3d 196, 207 (Ky. 2024).

In other words, Kentucky's UPEPA empowers courts to resolve defamation lawsuits that deal with matters of public concern as quickly as possible. KRS 454.462(2)(b)1. provides, in relevant part, that the scope of UPEPA includes:

> [a]n action against a person arising from any act of that person, whether public or private, related to the gathering, receiving, posting, or processing of information **for communication to the public**, whether or not the information is actually communicated to the public, for the creation, dissemination, exhibition, or advertisement or other similar promotion of a dramatic, literary, musical, **political**, journalistic, or otherwise artistic work, including audio-visual work regardless of the means of distribution, a motion picture, a television or radio program, or an article published in a newspaper, Web site, magazine, or other platform, no matter the method or extent of distribution[.]

(Emphasis added.)

Gearding insists that UPEPA does not apply, but his argument is underdeveloped. He asserts that "[l]ies are not a matter of public concern."[2] On the contrary, the sort of political speech at issue is precisely the type of speech encompassed by the UPEPA. The election of candidates to represent constituents at the local, state, and federal levels is absolutely and unequivocally a matter of

---

[2] *See* Appellee/Cross-Appellant's Brief at 2.

public concern. Furthermore, the fact that Gearding decided to run for political office meant he willingly became a public figure.[3, 4]

"[P]olitical speech directed toward public officials is at the pinnacle of protected speech." *Welch v. American Publishing Co. of Kentucky*, 3 S.W.3d 724, 726 (Ky. 1999). "[T]he constitutional protection of political speech requires public officials who bring defamation lawsuits against critics of their official conduct to meet a higher standard of proof than ordinary citizens if they are to prevail." *Id.* "This higher proof requirement for public figures is based upon the premise that unfettered political discussion is a necessary and fundamental principle of our constitutional system of government, assuring that political decisions will be made through persuasion rather than power." *Id.* at 727 (citation omitted).

To successfully demonstrate a *prima facie* case for defamation, Gearding must produce evidence that (1) the language of the fliers contain facially defamatory statements; (2) those facially defamatory statements are false; and (3) the persons responsible for those statements acted with actual malice, defined as acting "with knowledge that [the statements were] false or with reckless disregard

---

[3] Whether a plaintiff in a defamation action is a public figure is a question of law. *Warford v. Lexington Herald-Leader Co.*, 789 S.W.2d 758, 761 (Ky. 1990) (citation omitted).

[4] "Those who, by reason of the notoriety of their achievements or the vigor and success with which they seek the public's attention, are properly classed as public figures[.]" *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342 (1974).

of whether [they were] false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964); *Warford*, 789 S.W.2d at 771. However, Roberts, KDP, and Eldridge argue that the fliers and social media post constitute protected speech because the contents were pure opinion.

The Kentucky Court of Appeals recently addressed "opinion-based defamation claims" in *Ramler v. Birkenhauer*, 684 S.W. 3d 708 (Ky. App. 2024), as follows:

> In *Yancey v. Hamilton*, 786 S.W.2d 854 (Ky. 1989), the Kentucky Supreme Court adopted the RESTATEMENT (SECOND) OF TORTS' approach to opinion-based defamation claims. Pure opinion "occurs when the maker of the comment states the facts on which he bases his opinion of the plaintiff and then expresses a comment as to the plaintiff's conduct, qualifications or character." RESTATEMENT (SECOND) OF TORTS § 566 cmt. b. A statement consisting of pure opinion is absolutely protected. *Yancey*, *supra*, at 857. *See also Doe 1 v. Flores*, 661 S.W.3d 1, 7-8 (Ky. App. 2022) (comments made about the behavior of Covington Catholic students observed at a protest in Washington DC were not actionable because they were opinions).
>
> The other type of opinion, the mixed type, "is one which, while an opinion in form or context, is apparently based on facts regarding the plaintiff or his conduct that have not been stated by the defendant or assumed to exist by the parties to the communication." RESTATEMENT (SECOND) OF TORTS § 566 cmt. b. A mixed opinion may open a defendant to liability if a listener draws a reasonable inference that the defendant's opinion must have been based on undisclosed defamatory facts. *Yancey*, *supra*, at 857.

Soon after *Yancey*, the United States Supreme Court examined the relationship between opinion and fact in defamation claims in *Milkovich v. Lorain Journal Company*, 497 U.S. 1, 110 S. Ct. 2695, 111 L. Ed. 2d 1 (1990). The Court concluded a statement on matters of public concern must be sufficiently factual so that it may be proven false, or the statement must imply underlying facts which are provable as false before there can be liability under state defamation law. *Id.* at 21, 110 S. Ct. at 2707.

*Id.* at 719-20.

Relevant to Gearding's claims for false light, the *Ramler* Court held the following:

[f]alse light is part of the right to privacy. It can be difficult, although not impossible to apply the claim when the person is a public figure. The Kentucky Supreme Court recognized the cause of action of false light within the tort of invasion of privacy in *McCall v. Courier-Journal and Louisville Times Company*, 623 S.W.2d 882, 887-88 (Ky. 1981). False light and defamation are closely allied, and an injured party may seek relief through both causes of action, arising out of the same publication, but he is limited to only one recovery. *Id.* False light requires that (1) the false light in which the other was placed would be highly offensive to a reasonable person; and (2) the publisher had knowledge of, or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other was placed. *Id.* at 888.

*Id.* at 724.

For simplicity and consistency with the circuit court, we address each flier separately, as they appeared in Gearding's complaint, and address the social media post separate from the fliers.

**Flier No. 1**

Flier No. 1 was sent to voters by the Roberts campaign. The front of the card shows a cartoon drawing of Gearding behind bars with "Jailbird Jerry Gearding" next to the image. It also states "*Enquirer* investigation says NKY State House Candidate Jerry (Jerome) Gearding has history of domestic violence against women[.]" There is also a quote from the article which states, "Court records show the woman has filed two [EPOs] against Gearding – one in 2018 following his arrest and another on January 12, 2019, citing a danger of domestic violence and abuse." The back side of the card contains a mugshot of Gearding, and appearing next to it are the words "Jailbird Jerry Gearding is DANGEROUS[.]" (Emphasis in original.) There is also a statement that appears underneath a photograph of Roberts which states, "Roberts works tirelessly **protecting women and victims of violent crimes from people like Jailbird Jerry Gearding**, who has been arrested multiple times for assault and violence." (Emphasis in original.)

Gearding alleged that the statement "Gearding has a history of domestic violence against women" was false and malicious. He also alleged that the statement that Roberts protects "women and victims of violent crimes from

-10-

people like Jailbird Jerry Gearding" falsely insinuated that Gearding had committed violent crimes. The circuit court disagreed, finding that Gearding failed to demonstrate a *prima facie* case for defamation or false light. The circuit court reasoned Roberts disclosed the facts upon which her opinion was based as contained in the *Enquirer* article and that the statements on the flier were based upon those facts and, therefore, pure opinion. We agree.

Gearding's arguments concerning this flier and the others focus primarily on the fact that he was never *convicted* of domestic violence. He relies on *Cromity v. Meiners*, 494 S.W.3d 499 (Ky. App. 2015), in which this Court explained that, "[e]ven if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact." *Id.* at 503. Gearding asserts that the quote from the article was "cherry-picked" and the article never stated he was convicted of the crime of domestic violence. However, Flier No. 1 does not say that Gearding was convicted of domestic violence. It simply quotes the article with regard to the EPOs that were undisputedly entered against Gearding and also draws attention to the undisputed fact that Gearding was *arrested* multiple times for assault and violence. Based on that information, Roberts' opinion that Gearding has a history of domestic violence is pure opinion

-11-

entitled to protection. The circuit court did not err by dismissing Gearding's claims in relation to Flier No. 1.

**Flier No. 2**

Flier No. 2 was distributed to voters by KDP. The front of the card displays an image of a woman's face that shows a bruised lip, a black eye, and a bandage on her forehead. Below the image is the statement, albeit in small print, "[p]hoto depicted is a model not an actual victim." Next to the image is the statement, "State House candidate Jerry (Jerome) Gearding has a history of domestic violence against women." Below is the same quote from the *Enquirer* article used in Flier No. 1. The reverse side of the card contains a mugshot of Gearding and above it reads, "Republican candidate Jerry Gearding has a long history of arrests for domestic violence, disorderly conduct, public intoxication and drug possession."

The circuit court found that the stock image of the woman's face on the front of the flier was "highly inflammatory and suggestive" and created a genuine issue of material fact as to whether the flier, taken as a whole, is defamatory. The court found the disclaimer under the photograph that it was not an actual victim "is miniscule, to the point where it is almost impossible, if not impossible, to discern with the naked eye."

However, we must note that none of the original fliers appear in the record before us. Gearding's complaint contains copies of the fliers within the text that were presumably scaled down to fit into the various paragraphs of the complaint. They were also attached as exhibits to the complaint and, again, presumably scaled down so that the front and back appear on the same side of the page. The true size of the fliers mailed to voters is unknown. We also note that the disclaimer contained in the black and white image of Flier No. 2 in the index to Appellants' brief in No. 2023-CA-1268-MR – which notably had been photocopied and scanned before it reached this panel – was readable, albeit small. The image in the appendix is slightly larger than the photocopied images contained in the record. The circuit court found that the statement about Gearding's history of domestic violence against women was not defamatory on its own; however, the statement combined with the image created a genuine issue of material fact and therefore denied KDP's motion to dismiss Gearding's claim.

For his part, Gearding of course agrees with the circuit court. However, he also argues the statement that he "has history of domestic violence against women" is also defamatory. We hold it is not, for the same reason it was not in Flier No. 1 (*i.e.*, the *Enquirer* quote is provided). Strangely, Gearding argues that "KDP could have accurately stated that Gearding has a history of domestic violence _arrests_ . . ." and seems to imply that he would not take issue

-13-

with that wording.[5] However, that is exactly what the reverse side of the flier states—it points to his history of arrests, not convictions.

In terms of the photograph contained in Flier No. 2, in order for Gearding's claim to be actionable, he has to show that not only was the photograph false, but it was also printed and distributed by KDP with actual malice. *New York Times Co.*, 376 U.S. at 280. A showing of actual malice entails more than mere negligence. *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). It requires that the publisher of the defamatory falsehood have "entertained serious doubts" as to the truth of the published matter and must be shown by clear and convincing evidence. *Warford*, 789 S.W.2d at 771 (citation omitted). The disclaimer states the photograph is not an actual victim, despite the smaller font size. We agree with KDP that the image on Flier No. 2 cannot convert a non-defamatory statement to defamatory. Moreover, Gearding has not and cannot show actual malice. In *New York Times Co.*, even a newspaper's failure to fact-check a political ad before running it did not constitute actual malice. *New York Times Co.*, 376 U.S. at 287. Further, as explained in *Palmer v. Alvarado*, 561 S.W. 3d 367 (Ky. App. 2018):

> [i]n *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 514, 111 S. Ct. 2419, 2431-32, 115 L. Ed. 2d 447 (1991), the Supreme Court "reject[ed] the idea that any alteration beyond correction of grammar or syntax by itself proves falsity in the sense relevant to determining actual malice under the First Amendment." The Court explained that

---

[5] *See* page 12 of brief of Appellee/Cross-Appellant.

> "a deliberate alteration of the words uttered by a plaintiff does not equate with knowledge of falsity for purposes of *New York Times Co. v. Sullivan* unless the alteration results in a material change in the meaning conveyed by the statement." *Id.* at 517, 111 S. Ct. 2419, 2431-32 (internal citation omitted).

*Id.* at 372.

Additionally, as a person seeking public office who is claiming defamation, Gearding must "establish that statements have been made that hold him up to public hatred, contempt or ridicule, or that caused him to be shunned or avoided, or that injured him in his business or occupation[.]." *Doe v. Coleman*, 497 S.W.3d 740, 749 (Ky. 2016). Gearding has offered no evidence whatsoever of public contempt, hatred, or ridicule as a result of Flier No. 2. While it was arguably the intent of the KDP to subject Gearding to public scrutiny through use of the flier, "part of the turf of being a public official or public person is to be subject to public scrutiny." *McCall v. Courier-Journal and Louisville Times Co.*, 623 S.W. 2d 882, 886 (Ky. 1981). Gearding claims the fliers caused him to lose the election, but that is his subjective belief and is not provable.

Accordingly, we reverse the circuit court's decision to allow Gearding's claims pertaining to Flier No. 2 to survive dismissal.

**Flier No. 3**

Flier No. 3 was also distributed by KDP. The front of the flier shows a close-up of the hands of an unknown person in handcuffs. In the lower left

-15-

portion is one of Gearding's mugshots. Above the mugshot appears the statement, "If you hit a woman or endanger a child, you don't belong in Kentucky's House of Representatives[.]" In smaller font below appears the statement, "*Enquirer* investigation reveals state house candidate Jerry (Jerome) Gearding has a long history of arrests for domestic violence." The reverse side of the flier contains a quote from a local Northern Kentucky newspaper, *LINK NKY*, which reads:

> Gearding's first charge happened in September of 2018 when police were dispatched to a home in Wilder. According to the police report, a woman called and reported that Gearding assaulted and injured her. Gearding was attempting to leave with his 10-year old son, and when police removed Gearding from the car, he "had a strong odor of alcoholic beverages, bloodshot, watery eyes, and could not follow direction." He refused a field sobriety test, according to the report.
>
> **"The female caller had a swollen lip and cut on top of her head," the police report reads. "She stated (Gearding) punched her and shoved her, knocking her head into the microwave."**
>
> Further, the report says the son told the police that the two were fighting over a liquor bottle. **"Gearding was a danger to self and others," the report reads**.

(Emphasis in original.)

Next to the *LINK, NKY* quote appears another of Gearding's mugshots that has the following statement above it: "Republican candidate Jerry Gearding has a long history of arrests for domestic violence, disorderly conduct, public intoxication and drug possession."

-16-

The circuit court held that the statement, "If you hit a woman or endanger a child, you don't belong in Kentucky's House of Representatives" is pure opinion because KDP is expressing an opinion about what qualifies someone generally for state office. We agree. Gearding argues that placing the statement next to his mugshot implies that he abuses women and endangers children. However, as with Flier Nos. 1 and 2, the ad specifically points to Gearding's *arrests*.

Gearding also argues KDP acted maliciously because it failed to fully investigate his arrests and charges. This is a recurring theme from Gearding throughout these appeals. He contends that, if only Roberts, KDP, and Eldridge had investigated prior to circulating the fliers, they would have found that (1) he has always denied the charges; (2) the charges against him were ultimately dismissed; (3) the victim entered substance abuse treatment sometime after Gearding incurred the charges; and (4) the victim wrote a letter that absolves him of any wrongdoing. Gearding's argument is unpersuasive.

First, the substance of the fliers was based upon the result of investigations conducted by *The Cincinnati Enquirer* and *LINK NKY*, as shown in the quotes contained on the fliers. Notably, those news outlets are not parties to this lawsuit. Secondly, we agree with Roberts, KDP, and Eldridge that Gearding's denial of the allegations is irrelevant because it does not change the fact that he

-17-

was arrested and charged. The defendants' perspective on those arrests and charges for the purpose of the fliers was pure, protected opinion. Gearding's denial also does not change the fact that two EPOs were entered against him. Third, dismissal of at least one of the charges happened only after Gearding entered a guilty plea and completed diversion. Moreover, dismissal of criminal charges can happen for any number of reasons and does not necessarily mean the underlying behavior of which a person is accused did not occur. Finally, the personal letter purportedly from the victim to Gearding does not say that she falsely reported him and/or that he did not commit domestic violence against her. Also of significance is the fact that the letter was something to which only Gearding had access until he filed it as an exhibit in this action. Gearding demands that the victim and his child be permitted to testify as to the events of 2018 and 2019, but his argument misses the mark because this lawsuit is not an outlet for him to relitigate his criminal charges. It also implies that Roberts, KDP, and Eldridge should have interviewed the victim and/or the minor child prior to circulating the fliers rather than relying on court records and news articles. This level of "investigation" for a political advertisement by a political opponent as proposed by Gearding has no basis in the law.

Accordingly, we affirm the circuit court's dismissal of Gearding's claims related to Flier No. 3.

## Flier No. 4

Flier No. 4 was circulated by Roberts. The front contains two of Gearding's mugshots and another cartoon drawing of "Jailbird Jerry Gearding" that is the same as that on Flier No. 1. Above the mugshots appears the statement that, "[h]is arrest record and pattern of behavior for assault, domestic violence, child endangerment, and drunk driving speaks for itself." The reverse side of the flier contains a third mugshot of Gearding and beneath it is a list of various criminal charges and a bankruptcy going back to the year 2000. The domestic violence charges have quotes from the police reports beneath them. Beneath the list indicates, in relevant part, "SOURCE: Court records[.]"

The circuit court refused to dismiss Gearding's claims because it reasoned that the statement on the front of the flier next to his mugshots implied that he had been arrested for both domestic violence and child endangerment, but he has never been arrested or charged with child endangerment. On appeal, Roberts argues that use of the phrase "child endangerment" on the flier was colloquial, not a legal term of art. She points out that "child endangerment" is not a defined crime in Kentucky law. Rather, she contends that, based on publicly available court records and police reports, Gearding's minor son was present both times he was arrested for domestic violence and the police report from 2018 indicated that Gearding was "extremely intoxicated" in the child's presence when

-19-

the arrest was made. Roberts does not dispute that she based her opinion that Gearding endangered a child on the publicly available police reports; however, she argues that she merely used the content of the reports to form her opinion that Gearding clearly endangered a child by exposing him/her to such behavior, not that he was ever arrested or charged.

KRS 411.060, entitled "Action for libel; privileged communications" provides, in relevant part, that "[t]he publication of a fair and impartial report or the whole or a synopsis of any indictment . . . or [any] other document . . . in any criminal or civil action in any court . . . shall be privileged, unless it is proved that it was published maliciously . . . ." *See also Pearce v. Courier-Journal*, 683 S.W. 2d 633, 636 (Ky. App. 1985). The contents of the police reports are what led to the charges against Gearding; hence they are part of the documentation in his criminal proceedings, regardless of whether the charges were ultimately dismissed. The publication of the contents of those reports is therefore privileged under Kentucky law unless Gearding can prove maliciousness.

We agree that the police reports do not specifically cite Gearding for "child endangerment." However, the circuit court's and Gearding's reading of the statement at issue on Flier No. 4 is too narrow. To reiterate, the statement at issue is, "[h]is arrest record and pattern of behavior for assault, domestic violence, child endangerment, and drunk driving speaks for itself." We do not necessarily

-20-

disagree that the statement could have been constructed better, but we cannot agree that it amounts to maliciousness on the part of Roberts. For example, use of "itself" implies a singular subject when it is clearly compound. However, by saying "arrest record and pattern of behavior," Roberts is clearly talking about two separate things. Erroneous grammar and statements are inevitable in free debate. *See New York Times Co.*, 376 U.S. at 271. Moreover, because "child endangerment" does not have a precise legal definition in terms of an arrestable offense in Kentucky, Roberts was making an imprecise characterization about Gearding's behavior in the presence of his child based on the contents of the police reports. Roberts was therefore expressing her opinion.[6] *See Sandmann v. New York Times Company*, 78 F.4th 319, 332 (6th Cir. 2023).

Accordingly, we reverse the circuit court's decision to allow Gearding's claims related to Flier No. 4 to survive Roberts' motion to dismiss.

**Social Media Post**

Eldridge made a post to the social media platform formerly known as Twitter which was a "re-Tweet" of a post made by KDP. The original KDP post showed two mugshots. One was of Robert Goforth which was labeled "Pleaded

---

[6] Gearding also argues that Roberts' use of the police reports demonstrates defamation because police reports are generally inadmissible hearsay under the Kentucky Rules of Evidence. This argument is both bizarre and baffling, particularly at this stage of the proceedings, and we decline to address it further.

guilty to strangling his wife" and the other of Gearding, which was labeled,

"Arrested multiple times for domestic violence[.]"  Above the mugshots stated:

> Let this sink in:  for the second election cycle in a row, the KY GOP has nominated an accused violent abuser to serve in the General Assembly.
>
> First Goforth, who won reelection in 2020 despite his charges (he just pleaded guilty).
>
> Now Gearding is their nominee in a key race.
>
> Eldridge then wrote that "Domestic Abusers have no place in politics

or elected office.  Period."

The circuit court dismissed Gearding's claims regarding the social

media post because it was Eldridge's pure opinion on what qualifies someone for

public office.  We agree.  Eldridge laid out the facts to support his opinion, which

were contained in the original post from KDP.  The original post distinguished

between Goforth's guilty plea and Gearding's arrests.[7]  Gearding's argument that

the post implies he admitted to domestic violence or was in the process of pleading

guilty is simply a bridge too far.

Accordingly, we affirm the circuit court's dismissal of Gearding's

claims pertaining to Eldridge's social media post.

---

[7] Notably, Gearding does not have any claims concerning the original post by KDP.

## Conclusion

We conclude with a reminder from the Supreme Court of the United States:

> An individual who decides to seek governmental office must accept certain necessary consequences of that involvement in public affairs. He runs the risk of closer public scrutiny than might otherwise be the case. And society's interest in the officers of government is not strictly limited to the formal discharge of official duties. As the Court pointed out in *Garrison v. Louisiana*, [379 U.S. 64, 77 (1964),] the public's interest extends to 'anything which might touch on an official's fitness for office. . . . Few personal attributes are more germane to fitness for office than dishonesty, malfeasance, or improper motivation, even though these characteristics may also affect the official's private character.'

*Gertz*, 418 U.S. at 344-45.

Roberts, KDP, and Eldridge seized upon Gearding's arrest history to highlight their opinion that he was unfit for public office. Therefore, for the foregoing reasons, the judgment of the Campbell Circuit Court is affirmed with regard to Flier No. 1, Flier No. 3, and the social media post (No. 2023-CA-1317-MR). The judgment of the Campbell Circuit Court is reversed regarding Flier No. 2 and Flier No. 4 (No. 2023-CA-1268-MR).

ALL CONCUR.

BRIEFS FOR
APPELLANTS/CROSS-
APPELLEES:

Michael P. Abate
William R. Adams
Louisville, Kentucky

BRIEFS FOR APPELLEE/CROSS-
APPELLANT:

Cory D. Britt
Cincinnati, Ohio